**UNITED STATES of America,
Petitioner-Appellee,**

v.

**Leonard PATRICK,
Respondent-Appellant.**

No. 75–2014.

United States Court of Appeals,
Seventh Circuit.

Sept. 23, 1976.
Rehearing and Rehearing En Banc Denied
Nov. 30, 1976.

Sherman C. Magidson, Chicago, Ill., for respondent-appellant; Carl P. Clavelli, Chicago, Ill., of counsel.

Samuel K. Skinner, U.S. Atty., Gregory H. Ward, Asst. U.S. Atty., Chicago, Ill., for petitioner-appellee.

Before HASTINGS, Senior Circuit Judge, TONE, Circuit Judge, and NOLAND, District Judge.*

* Honorable James E. Noland of the United States District Court for the Southern District of Indiana is sitting by designation.

1. Such section provides in relevant part as follows:

§ 401 Power of Court.

NOLAND, District Judge.

This appeal arises from appellant Leonard Patrick's conviction of the charge of criminal contempt of court, pursuant to 18 U.S.C. § 401[1] and Rule 42 of the Federal Rules of Criminal Procedure. Patrick was found guilty after a trial by jury for his refusal to obey a court order directing him to answer questions during the course of a criminal trial in which he had been granted immunity under 18 U.S.C. §§ 6002–6003 in exchange for his testimony. Upon his conviction Patrick was sentenced to a term of four years. We affirm the conviction below.

## I.

The record herein discloses that on January 31, 1974, Patrick was granted immunity pursuant to 18 U.S.C. §§ 6002–6003 and ordered to testify before the Special January 1974 Grand Jury for the Northern District of Illinois. On two prior occasions Patrick had appeared before the grand jury but had refused to testify on the basis of his Fifth Amendment privilege against self-incrimination. After receiving immunity Patrick appeared before the grand jury on February 6, 1974, and gave testimony concerning his knowledge of gambling activities in the Chicago area and his past relationship with Lieutenant Ronald O'Hara of the Chicago Police Department. Patrick also testified before the grand jury on February 27, 1974, and December 17, 1974, concerning the same inquiry. Primarily as a result of Patrick's testimony, O'Hara was charged in January 1975, under a three-count indictment, two of which counts alleged that O'Hara had failed to report money received from Patrick on his 1968 and 1969 federal income tax returns.

The O'Hara trial commenced on June 9, 1975, before Judge Marshall in the United

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

\* \* \* \* \* \*

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

States District Court for the Northern District of Illinois. Prior to his being called to the stand on June 10, 1975, as the government's first witness, Patrick was again granted immunity pursuant to 18 U.S.C. §§ 6002–6003 for any testimony he might give at such trial. The court then ordered Patrick to testify and advised him that no testimony compelled under such immunity order could be used against him in any criminal case, except for a prosecution for perjury, giving a false statement, or otherwise failing to comply with the court's order under §§ 6002–6003.

After being duly sworn as a witness, Patrick stated his name and that he resided in Chicago but refused to answer any questions concerning his connection with gambling activities during 1968–1969 and of his relationship with O'Hara during those years. Patrick consistently justified his refusal to answer such questions by stating:

> "I respectfully decline to answer on the ground that my answer may tend to incriminate me and on any other ground presented or to be presented by my counsel."

Upon further inquiry by the court and a re-reading of the immunity order, Patrick stated that he understood the order but he continued to refuse to answer the government's questions. The court then found Patrick to be in civil contempt and remanded him to the custody of the United States Marshal.

On June 11, 1975, Patrick was returned to court and given a chance to purge himself of civil contempt and avoid further prosecution for criminal contempt. Again Patrick was advised of the immunity order entered by the court but he continued to assert the same objections and refused to answer the government's questions. Patrick was again held pursuant to the civil contempt order and a petition was filed for a rule to show cause why Patrick should not be held in criminal contempt, pursuant to Rule 42(b) of the Federal Rules of Criminal Procedure. Trial was thereafter held upon Patrick's plea of not guilty, and upon conviction he was sentenced to a term of four years.

## II.

■ The first issue raised by Patrick is whether immunity conferred pursuant to 18 U.S.C. §§ 6002–6003 prohibits the use of the compelled testimony in an "inconsistent declarations" prosecution under 18 U.S.C. § 1623(c)[2] and is, therefore, co-extensive with the privilege against self-incrimination under the Fifth Amendment. Patrick argues that notwithstanding his immunization prior to testifying before the grand jury and again prior to being called as a witness in the O'Hara trial, he still could have been prosecuted under § 1623(c) if his testimony at trial was materially inconsistent with his testimony before the grand jury.[3] There-

---

**2.** Section 1623 was enacted as part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 932, and provides in pertinent part as follows:

> (c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—(1) each declaration was material to the point in question, and (2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

> In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while

under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made such declaration believed the declaration was true.

**3.** The distinguishing feature of a § 1623(c) prosecution is that the government need only demonstrate that the defendant made two or more declarations under oath which were material to the issue in question and were inconsistent to the degree that one of them is necessarily false. The government need not allege nor prove which declaration was in fact false. The primary purpose of this section was to avoid the "two witnesses" rule of perjury prosecutions which demands that the falsity of a perjured statement be established by the testi-

fore, Patrick alleges his assertion of the privilege against self-incrimination was proper and that the court erred in denying his motion to dismiss the order to show cause on such ground. The government responds that Patrick's immunity would extend to protection from prosecution under § 1623(c) because the use of any immunized testimony to demonstrate Patrick's having made inconsistent declarations would be forbidden by the immunity statute as interpreted in *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ Our research has uncovered no cases which clearly resolve the particular challenge brought herein to §§ 6002–6003 immunity. It is well settled, however, that the grant of use and derivative use immunity under §§ 6002–6003 is co-extensive with the Fifth Amendment privilege against self-incrimination, *Kastigar v. United States, supra,* 406 U.S. at 453, 92 S.Ct. 1653, 1661; *United States v. Cappetto,* 502 F.2d 1351, 1359 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), and that the statute "prohibits the prosecutorial authorities from using the compelled testimony in *any* respect," except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. *Kastigar v. United States, supra.* This latter qualification recognizes, for example, that if the witness commits perjury in giving the compelled testimony, the grant of immunity will not protect him from a perjury prosecution since no immunity attaches to false testimony given pursuant to the immunity order. *United States v. Tramunti,* 500 F.2d 1334, 1342–44 (2nd Cir. 1974).

■ Patrick primarily relies on the case of *United States v. Hockenberry,* 474 F.2d 247 (3rd Cir. 1973), which held that the immunity statute permits the introduction

in evidence of so much of the witness' testimony as is essential to establish the *corpus delicti* of the offense of perjury, i. e., proving the witness made the statement. Patrick thus argues that it would not be improper for the government to use his immunized testimony in a § 1623(c) prosecution merely for the purpose of establishing the *corpus delicti,* i. e., that he made the inconsistent declarations. Since the government would not have to prove which one of the two inconsistent declarations was false, the mere offering of proof that such declarations were made would establish the offense. While we agree with the court in *Hockenberry* that the witness' immunized testimony may be used to establish the fact that he committed perjury in the giving of such testimony, we do not agree with Patrick's assertion that such testimony could also be used to establish the *corpus delicti* of an inconsistent declarations prosecution. We believe such use was not intended by Congress to come within the exception found in § 6002 that the compelled testimony may be used in "a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." As recognized by this Court in *United States v. Watkins,* 505 F.2d 545 (7th Cir. 1974), this exception refers only to "future" perjury, false statements or non-compliance with the court order. To interpret this perjury exception to include a prosecution under § 1623(c) for inconsistent statements, some of which were made prior to the latest grant of immunity, would be too broad of a reading of § 6002.

The effect of inconsistent statements on immunity grants was discussed by the Illinois Supreme Court in the recent case of *People v. Denson,* 59 Ill.2d 546, 322 N.E.2d 464 (1975). In *Denson* the witness was held in contempt for refusal to testify at trial despite her being granted immunity for such testimony. The witness refused to

mony of two independent witnesses. *See United States v. Gross,* 375 F.Supp. 971, 975 (D.N.J. 1974), *aff'd* 511 F.2d 910, 914 (3rd Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975); *see also* 1970 U.S.Code Cong. & Admin.News p. 4007.

This court has previously upheld the constitutionality of § 1623. *See e. g. United States v. Isaacs,* 493 F.2d 1124, 1155–56 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

testify on Fifth Amendment grounds arguing that such compelled testimony could be used to show inconsistencies with her grand jury testimony and she therefore faced the possibility of prosecution under an inconsistent declarations provision of the state perjury statute.[4] The court in relying on the case of *People v. Walker,* 28 Ill.2d 585, 192 N.E.2d 819 (1963), held that the testimony given under the immunity order could not be used to show inconsistencies with her grand jury testimony. Therefore, her refusal to testify was not justifiable on Fifth Amendment grounds.

Patrick attempts to distinguish the *Denson* holding on the basis that Illinois has a transactional immunity statute, as opposed to the use immunity statute applicable herein. We do not believe such distinction between the types of immunity afforded in the *Denson* case and under §§ 6002–6003 to be important. As recognized by the Illinois court in *Walker,* perjury by inconsistent statements must necessarily be shown through the use of the immunized testimony. We believe such use to be improper under *Kastigar* and that Congress intended immunity conferred under § 6002 to extend to "inconsistent declarations" prosecutions under § 1623(c)

We therefore conclude that §§ 6002–6003 does not allow use of the immunized testimony to establish the basis for prosecution under 18 U.S.C. § 1623(c) and that Patrick's challenge to his immunity order on Fifth Amendment grounds was improper.

### III.

Patrick next contends that sufficient evidence was presented in support of his asserted defense of duress to justify having such defense submitted to the jury. At the conclusion of the evidence the Judge ruled that insufficient evidence had been presented to support the defense, curtailed closing argument thereon, and refused to instruct the jury as to the defense.

▇ The parties are in agreement that a defendant is entitled to have the jury consider any theory of defense which is supported by law and has some foundation in the evidence, even though such evidence may be weak, insufficient or of doubtful credibility. *United States v. Lehman,* 468 F.2d 93, 108 (7th Cir.), *cert. denied,* 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232 (1972); *United States v. Vole,* 435 F.2d 774, 776–77 (7th Cir. 1970). However, if the defendant fails to sustain his evidentiary burden the court is duty-bound not to instruct the jury on the defense. *United States v. Cullen,* 454 F.2d 386, 390 (7th Cir. 1971). Historically the courts have struggled in attempting to formulate a quantitative measure of the amount of evidence necessary to raise an issue for jury consideration, but it goes without saying that the differing facts of each case make any meaningful comparisons almost impossible.

Before reviewing the evidence presented below in an attempt to determine whether Patrick satisfied his preliminary burden with respect to the defense of duress, we must initially identify the elements of such defense. In the recent case of *United States v. Nickels,* 502 F.2d 1173 (7th Cir. 1974), *cert. denied,* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), this court was faced with a situation wherein the defendant had asserted duress as a defense to the charge of committing perjury before a grand jury. While agreeing that duress could be a defense to such a charge, the court held:

> "In any event, this Circuit follows the common law rule that duress is a defense only if the defendant reasonably feared immediate death or severe bodily injury which could be avoided only by committing the criminal act charged. *United States v. Stevison,* 471 F.2d 143, 147 (7th Cir. 1972), following *Shannon v. United States,* 76 F.2d 490, 493 (10th Cir. 1935)."
> 502 F.2d at 1177.

The Tenth Circuit in *Shannon v. United States, supra,* similarly enunciated the test as follows:

> "Coercion which will excuse the commission of a criminal act must be immediate

**4.** Ill.Rev.Stat.1961, Ch. 38, Section 32–3.

and of such nature as to induce a well-grounded apprehension of death or serious bodily injury if the act is not done. One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion and is not entitled to an instruction submitting that question to the jury." 76 F.2d at 493.[5]

Without attempting to fully recount the testimony presented in support of the defense of duress, we will attempt to summarize the evidence which Patrick relies upon to justify his refusal to answer questions at the O'Hara trial. It is undisputed that, beginning immediately after Patrick's first immunized grand jury appearance O'Hara made several visits to the Patrick home in an attempt to communicate with Patrick. On February 9, 1974, three days after Patrick's initial immunized appearance before the grand jury, O'Hara appeared at the home of Patrick's daughter, ex-wife, and aunts.[6] When informed that Patrick was not at home, O'Hara asked one of Patrick's aunts to tell Patrick to get in touch with him as soon as possible. O'Hara further stated, "It's very important that I see him because it don't only involve him it involves his family, too." When Patrick was informed of O'Hara's visit he told his family that O'Hara was dangerous[7] and that they should not answer the door. The evidence suggests that Patrick was very concerned and upset about O'Hara's visit and that he contacted his attorney, who thereafter advised Patrick to leave town for the time being. Patrick's attorney contacted the United States Attorney's office and asked that O'Hara be kept away from Patrick. Patrick's attorney refused a government offer to provide protection for Patrick upon the belief Patrick would not have wanted such protection and also upon the belief that the offer was not bona fide.

Approximately one week later O'Hara made another visit to the Patrick home and again explained that he must get in touch with Patrick. At his February 27, 1974, appearance before the grand jury, Patrick testified that O'Hara had visited his home and he also gave information he had concerning the basis for O'Hara's reputation as a killer. However, Patrick did not advise the grand jury of the alleged threats made by O'Hara. Shortly thereafter O'Hara again came to the Patrick home but Patrick refused to answer the door. Late in the fall of 1974 O'Hara again came to the Patrick home. When informed that Patrick was not at home, O'Hara allegedly became upset and said that Patrick had better get in touch with him or ". . . there is going to be a lot of heartache for all of you."

Patrick again testified before the grand jury on December 17, 1974, and O'Hara was indicted in January 1975. During the following May, O'Hara came to the Patrick home and, upon being advised Patrick was not there, told Patrick's daughter: "Either I see your father before my case goes to trial or you are all going to suffer, and you tell him that, and tell him not to forget it." Upon being informed of O'Hara's recent visit and message, Patrick advised his attorney that he was not anxious to testify against O'Hara. Upon being subpoenaed to testify at the O'Hara trial on June 10, 1975, Patrick refused to answer questions pertaining to O'Hara.

 We should initially point out that the testimony presented by Patrick and others in his behalf indicates a sincere belief on the part of Patrick that O'Hara was a dangerous person who seemingly presented a threat to the safety and well-being of Patrick and his family. Patrick asserts that he was very much afraid of O'Hara and that

---

5. Cited with approval by this court in *United States v. Cullen, supra,* 454 F.2d at 391 n. 12.

6. Although Patrick did not actually live at this house, he visited there daily and was in constant communication with his daughter. This house will be generally referred to as Patrick's home.

7. Patrick presented testimony to the effect that O'Hara had a reputation for being a killer and quite dangerous. Patrick also suggested that although he was aware that grand jury proceedings are to be secret, O'Hara had ways of finding out the extent of Patrick's testimony.

this fear carried over into the lives of his family and friends. We must point out, however, that fear, by itself, will not legally justify or excuse a witness' refusal to testify in violation of a court order. *Piemonte v. United States,* 367 U.S. 556, 559 n. 2, 81 S.Ct. 1720, 6 L.Ed.2d 1028 (1961); *United States v. Leyva,* 513 F.2d 774, 790 (5th Cir. 1975). Before Patrick is entitled to have the jury consider O'Hara's actions as a defense to his refusal to obey the court's order, he must present evidence on all of the elements of the defense of duress.

As the cases cited earlier indicate, the element of immediacy is of crucial importance in any attempt to raise duress as a defense to criminal charge. Although evidence was presented demonstrating a reasonable apprehension of injury by Patrick as a result of O'Hara's threats, there is no evidence that such injury was present, immediate, or impending. In light of the fact that apparently no action was taken by O'Hara to carry out his threats of the past eighteen months, we believe Patrick failed to demonstrate the immediacy of his fear. The record fails to disclose any evidence that O'Hara made any attempt to contact Patrick from the time of his last visit to the Patrick home in May until the time his trial was to commence on June 9, 1975.

The court in the case of *R. I. Recreation Center v. Aetna Casualty & Surety Co.,* 177 F.2d 603 (1st Cir. 1949), in reaching the conclusion that no evidence had been presented on the defense of coercion, stated that "a veiled threat of future unspecified harm . . . is not the equivalent of an immediate threat of death or severe bodily injury." *Id.,* at 605. We believe such principle is applicable herein.

Additionally, it is our belief Patrick also failed to take the reasonable steps available in an attempt to extricate himself from the apparent danger. Although Patrick warned his family of O'Hara's dangerous reputation and informed his attorney of the threats, at or near the commencement of the O'Hara trial he failed to take any measures to protect himself or his family

from O'Hara. At the time of his refusal to obey the order to testify, we believe he had an affirmative duty to inform the government authorities and the court of the threats and of his reluctance to testify unless adequate safeguards were taken to protect himself and his family and prevent retaliation from O'Hara. At the time of his refusal to testify Patrick made no attempt to inform the court as to his fears, the basis therefor, and the steps he had taken to alleviate the alleged danger so that he might comply with the law.

As recognized in *Shannon v. United States, supra,* one who has an opportunity to avoid violating the law without subjecting himself to immediate danger may not assert such threats as a defense and is not entitled to an instruction submitting such defense to the jury. 76 F.2d at 493. Under the circumstances of his case, we believe that as a matter of law Patrick failed to take sufficient steps to avoid subjecting himself to the alleged danger without disobeying the order to testify.

The public is entitled to any man's evidence concerning criminal acts committed by another. *Piemonte v. United States, supra,* 367 U.S. at 559, 81 S.Ct. 1720. The entire criminal justice process could be rendered inoperable if a witness with evidence concerning a crime could refuse to provide such evidence based on a few vague threats of reprisal made during the eighteen month period of time proceeding the witness' appearance in court.

Because we believe that Patrick failed to present evidence as to the immediacy of the danger to which he and his family were subjected or that he had no other opportunity to obey the court's order without subjecting himself to such danger, the court below did not err in withdrawing the defense of duress from the jury's consideration.

## IV.

Patrick next argues the court erred in instructing the jury as to the "willfulness" element of criminal contempt. Concerning

this element of the offense the jury was instructed as follows:

"An act or failure to act is 'willfully' done if done voluntarily and intentionally, and with the specific intent to fail to do something the law requires to be done; that is to say, with the purpose either to disobey or disregard the law."

The only distinction between the instruction given and the one tendered by Patrick was the omission of the word "bad" just preceding the word "purpose." Similarly, except for that slight modification, the instruction given is identical to the standard instruction on willfulness. See Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 16.14 and cases cited therein. Patrick argues that his motive in this case is crucial and therefore that "bad purpose" is a necessary element of the willfulness instruction.

 It is axiomatic that in determining the propriety of instructions they are to be viewed as a whole. *United States v. Brown*, 518 F.2d 821, 826 (7th Cir.), *cert. denied* 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975); *United States v. Johnson*, 515 F.2d 730, 732–33 n.7 (7th Cir. 1975). As long as the instructions treat the issues fairly and adequately they will not be interfered with on appeal. *United States v. Isaacs*, 493 F.2d 1124, 1163 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). The instructions given herein properly advised the jury that in order for Patrick to be found guilty of criminal contempt they had to find that he acted with specific intent and that he inten-

tionally failed to testify as he was directed to do. Regardless of Patrick's motive for his refusal to testify,[8] as long as such refusal was volitional and done with the awareness it was wrongful, the degree of intent necessary for a conviction was established. *United States v. Seale*, 461 F.2d 345, 368 (7th Cir. 1972).

 Other courts have held that the words "bad purpose" are not a mandatory element of a jury charge defining wilfulness. *See e. g.*, *Cooley v. United States*, 501 F.2d 1249 (9th Cir. 1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *United States v. Malinowski*, 472 F.2d 850, 855 (3rd Cir.), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973). In viewing the instructions given herein, we believe the jury was properly advised that the crime of criminal contempt requires a specific intent to consciously disregard an order of the court. In light of the insufficiency of evidence to support the defense of duress, the Judge acted properly in restricting Patrick's attempt to argue his motive for refusing to testify as ordered. We find no error in the instructions as given below.

## V.

With regard to Patrick's contention that the District Judge should have disqualified himself *sua sponte* in this cause, Patrick alleges the Judge's reading and consideration of his grand jury testimony caused the Judge to form such an adverse personal opinion of Patrick that it was incumbent upon him to have disqualified herein.

---

8. In the case of *United States v. Cullen*, 454 F.2d 386 (7th Cir. 1971), which involved a prosecution for the willful destruction of public records, this court discussed the problem of equating motive with intent and stated:

In a case such as this, if the proof discloses that the prohibited act was voluntary, and that the defendant actually knew, or reasonably should have known, that it was a public wrong, the burden of proving the requisite intent has been met; proof of motive, good or bad, has no relevance to that issue. 454 F.2d at 392.

Similarly, the Fourth Circuit stated as follows in the case of *United States v. Moylan*, 417 F.2d

1002 (4th Cir. 1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970):

To read the term "willfully" to require a bad purpose would be to confuse the concept of intent with that of motive. The statutory requirement of willfullness is satisfied if the accused acted intentionally, with knowledge that he was breaching the statute . . . [W]hatever motive may have led them to do the act is not relevant to the question of the violation of the statute, but is rather an element proper for the judge's consideration in sentencing. 417 F.2d at 1004.

The record reflects that Judge Marshall did afford Patrick an opportunity to request trial before another judge but such opportunity was not accepted. Similarly, at no time during the proceedings below did Patrick advise the court of any desire for a different judge or of any dissatisfaction with his impartiality.[9] Patrick argues, however, that such bias did not become apparent until the sentencing proceedings when the Judge advised Patrick that he had read the transcripts of his grand jury testimony and was distressed at his open refusal to testify in a similar manner at the O'Hara trial.

The law is well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification. *Satterfield v. Edenton-Chowan Board of Education,* 530 F.2d 567, 574–75 (4th Cir. 1975); *Duplan Corporation v. Deering Milliken, Inc.,* 400 F.Supp. 497, 505–06 (D.S.C.1975); *Hall v. Burkett,* 391 F.Supp. 237, 241 (W.D.Okl.1975). We believe it was incumbent upon Patrick to have raised his contentions concerning any bias on the part of Judge Marshall as soon as the basis for such a belief surfaced during the sentencing proceedings. Such objection would have allowed the Judge an opportunity to respond to Patrick's present allegation.

In the recent case of *United States v. Jeffers,* 532 F.2d 1101 (7th Cir. 1976), this court discussed many of the cases in which a defendant has argued the judge was improperly biased by reason of some prior judicial connection with the defendant. Therein the principle was recognized the judge is presumed to be impartial and it

was further noted that unless facts are presented alleging "personal" as opposed to "judicial" bias, the judge need not recuse himself. *Id.* at 1112; see also *United States v. Mitchell,* 377 F.Supp. 1312, 1320 (D.D.C. 1974), *aff'd. sub nom. Mitchell v. Sirica,* 163 U.S.App.D.C. 373, 502 F.2d 375 (1974), *cert. denied,* 418 U.S. 955, 94 S.Ct. 3232, 41 L.Ed.2d 1177 (1974).

Under 28 U.S.C. § 455(b)(1) the judge is to disqualify himself "[W]here he has a personal bias or prejudice concerning a party, . . ." It has been held that under this statute such decision "is a matter confined to the consideration and discretion of the judge himself." *Shadid v. Oklahoma City,* 494 F.2d 1267, 1268 (10th Cir. 1974). In the case of *United States v. Seiffert,* 501 F.2d 974 (5th Cir. 1974), it was recognized that merely prior knowledge by the judge of facts concerning a party is not in itself sufficient to require disqualification. *Id.* at 978. Moreover, facts learned by a judge in his judicial capacity cannot be the basis for disqualification. *United States v. Bernstein,* 533 F.2d 775, 785 (2d Cir. 1976).[10]

It appears that the Judge's initial exposure to the grand jury testimony occurred upon Patrick's refusal to testify during the course of the O'Hara trial. However, Patrick himself made use of his grand jury testimony at his own trial by offering into evidence a transcript of the testimony of February 27, 1974, and December 17, 1974, and in questioning various witnesses therefrom in order to support his defense. We believe that in light of the principles recognized in *Jeffers* and the entire circumstances of the proceedings below, the Judge's exposure to Patrick's grand jury testimony does not establish improper bias

---

9. If Patrick had made a verified motion for a change of judge pursuant to 28 U.S.C. § 144 alleging facts sufficient to show bias, Judge Marshall would have been required to grant such motion even though he believed the allegations therein to be false. *Berger v. United States,* 255 U.S. 22, 35–36, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *United States v. Sciuto,* 531 F.2d 842, 845 (7th Cir. 1976).

10. In *Bernstein* the court said:

The rule of law, without belaboring the point, is that what a judge learns in his judicial capacity—whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both—is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification. 533 F.2d at 785.

herein and the Judge did not err in presiding over the trial and sentencing proceedings below.

## VI.

 In a claim similar to the one raised immediately above, Patrick next argues that the Judge's consideration of his grand jury testimony in imposing the sentence herein was an impermissible use of immunized testimony. The record reflects that at the sentencing proceedings below the Judge indicated to Patrick he had read the transcripts of his grand jury testimony and had come to the conclusion that Patrick had been an avid witness who went out of his way to make serious accusations against Lieutenant O'Hara. Counsel for Patrick disagreed with the Judge's analysis of the grand jury proceedings but made no objection as to his having read Patrick's testimony. After further discussion, sentence was imposed. Patrick argues that use of immunized testimony in determining the severity of punishment violates the clear command of *Kastigar* that such testimony not be used against a witness "in any respect." *Kastigar v. United States, supra,* 406 U.S. at 453, 92 S.Ct. at 1661.

The government responds by citing many cases stating that the grant of immunity precludes any assertion by the witness of his Fifth Amendment privilege. See *e. g.*

*Maness v. Meyers,* 419 U.S. 449, 462 n. 10, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *In Re Michaelson,* 511 F.2d 882, 889–90 (9th Cir.), cert. denied, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). It argues the privilege against self-incrimination extends only to testimony which could subject the witness to *criminal prosecution* and does not protect him once criminality has been established by a conviction.[11] Therefore, the government contends any consideration by Judge Marshall of Patrick's grand jury testimony was not improper since such testimony was not used as evidence either to prosecute or convict him.

We believe the case of *United States v. Wilson,* 488 F.2d 1231 (2nd Cir. 1973), *rev'd on other grounds,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975), is of help in resolving the present claim of Patrick. In *Wilson,* the appellants had been convicted of criminal contempt for refusing to testify at the trial of an accomplice, despite their having been immunized pursuant to 18 U.S.C. §§ 6002–6003. At the time of their refusal to testify the appellants had not yet been finally sentenced on their own guilty pleas and they argued that any admission by them of the details of the robbery might weigh against them at their own sentencing. Since the judge presiding over the accomplice's trial was also going to impose sentence upon appellant Wilson, Wilson contended the danger of adverse use of the

---

11. The government relies primarily on the case of *United States v. Swift,* 186 F. 1002, 1011, 1017–18 (N.D.Ill.1911) and other cases discussed therein. See also *Maness v. Meyers, supra,* wherein the Supreme Court stated:

This Court has always broadly construed its [Fifth Amendment privilege] protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action. (Citations omitted). The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution. 419 U.S. at 461, 95 S.Ct. at 592.

The government also relies on cases recognizing the very broad discretion the judge possesses as to the type of information he may use in sentencing, see, *e. g., United States v. Tucker,* 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States v. Marines,* 535 F.2d 552, 554 (10th Cir. 1976); *United States v. Johnson,* 507 F.2d 826, 828–30 (7th Cir. 1974), cert. denied, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975), and analogizes by citing various cases which hold that for sentencing purposes a judge may consider evidence obtained in violation of the defendant's rights under the Fourth Amendment, provided the illegally seized evidence was not gathered for the purpose of improperly influencing the defendant's sentencing. See, *e. g., United States v. Schipani,* 435 F.2d 26, 28 (2nd Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971); *Verdugo v. United States,* 402 F.2d 599, 610–12 (9th Cir. 1968), cert. denied, 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971).

compelled testimony at sentencing precluded his grant of immunity from being co-extensive with his Fifth Amendment privilege. The Second Circuit held that the appellants had failed to properly preserve the issue for appeal and did not resolve whether the potential use of the compelled testimony in sentencing would be forbidden. 488 F.2d at 1233 n. 5. The Court rejected appellant's arguments by stating as follows:

"But neither Wilson nor Bryan followed what we deemed [sic] to be proper procedure in raising the issue of 'forbidden use.' If appellant Wilson doubted the ability of Judge Lasker to put out of his mind Wilson's statements at Anderson's trial, he should nevertheless have testified as ordered, but requested a different judge for sentencing on the robbery charge. Similarly, if Bryan genuinely feared an increased sentence on his guilty plea as a result of testifying in the *Anderson* case, he, too, should have given the evidence, then asked that proper precautions be taken (e. g., sealing the record) to insure that Judge Cooper would not be privy to the statements made under grant of immunity. Both were, however, required to obey the mandate of 18 U.S.C. § 6002 that 'the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination . . .'" 488 F.2d at 1233 (Citations and footnotes omitted)

Although the *Wilson* case was later reversed by the Supreme Court on other grounds, the issue of whether the possible use of compelled testimony in sentencing is forbidden by *Kastigar* and the Fifth Amendment was neither presented to nor resolved by the Court. 421 U.S. at 311–12 n. 3, 95 S.Ct. 1802.

Although we agree with Patrick that the facts herein are distinguishable from those in *Wilson* in that Patrick was apparently unaware of the Judge's consideration of the grand jury testimony until the time of his sentencing, we believe the principle enunciated in *Wilson* is valid. Even if we assume

the Judge's consideration of Patrick's grand jury testimony was improper, as soon as it became known to Patrick that such testimony had been considered in determining the sentence we believe Patrick had an obligation to take the proper steps to protect his rights. If he had sought a change of judge for sentencing purposes as discussed in *Wilson,* either his Fifth Amendment privilege would have been protected or he would have properly preserved his claim for appeal.

Furthermore, as discussed above, Patrick should not be allowed to complain about the Judge's exposure to his grand jury testimony in light of his own use of portions thereof as a part of his defense. In light of the Second Circuit's holding in *Wilson,* and the circumstances under which Judge Marshall was exposed to the immunized testimony herein, we do not believe Patrick is now entitled to object to the use of such testimony in his sentencing.

## VII.

As to the final issue of whether the four year sentence imposed herein was excessive, we must initially point out that neither 18 U.S.C. § 401 nor Rule 42 of the Federal Rules of Criminal Procedure set forth a maximum sentence for criminal contempt. In light of the absence of such statutory limitation, the severity of the sentence to be imposed is within the sound discretion of the district court. *Green v. United States,* 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958). While the Supreme Court has imposed upon the appellate courts the responsibility of insuring that this discretion is not abused, *Cheff v. Schnackenburg,* 384 U.S. 373, 380, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966), great reliance is to be placed on the district court's decision. *United States v. United Mine Workers of America,* 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *United States v. Seale,* 461 F.2d 345, 355 (7th Cir. 1972).

Patrick argues since over half of the states have limited the imprisonment for criminal contempt to one year or less, see

*Bloom v. Illinois,* 391 U.S. 194, 206–07 n. 8, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), and a witness who refuses to testify before a grand jury may not generally be imprisoned for more than eighteen months under 28 U.S.C. § 1826, the sentencing discretion was abused in this case. Patrick also contends that even if the testimony concerning O'Hara's threats do not legally excuse his refusal to testify at trial, such evidence should have justified a shorter sentence being imposed.

Although this court in appropriate cases has reduced or modified sentences imposed for criminal contempt,[12] we are unable to find the sentence imposed herein was an abuse of discretion. In the case of *United States v. Thompson,* 214 F.2d 545 (2nd Cir. 1954), the Second Circuit affirmed a sentence for criminal contempt of four years for the defendant's failure to respond to a surrender order. Similarly, in the case of *United States v. Sternman,* 433 F.2d 913 (6th Cir. 1970), the Sixth Circuit affirmed a sentence of three years for witness' refusal to testify before the grand jury. Furthermore, in attempting to compare Patrick's conduct herein with offenses other than criminal contempt, we find that the offenses of perjury[13] and obstruction of a criminal investigation[14] each provide for terms of imprisonment up to five years. In light of the above authority four years is not *per se* an excessive sentence for criminal contempt.

It must be emphasized that this case does not involve merely a witness' refusal to testify before a grand jury concerning his knowledge of criminal activity. Patrick made serious accusations before the grand jury concerning illegal conduct on the part of O'Hara, which testimony apparently was the primary basis for O'Hara's indictment,[15] but Patrick later refused to provide the same testimony at O'Hara's trial. Where an individual has been indicted primarily as a result of a witness' grand jury testimony, the effects on the criminal justice system can be damaging when courts are not given the power to impose severe sanctions for subsequent contumacious conduct on the part of the witness. For example, if Patrick's accusations were false, he subjected O'Hara to a criminal indictment and its resulting expense and embarrassment without giving O'Hara the opportunity to confront such allegations and obtain the proper vindication. If, in fact, Patrick's allegations were true, he caused the fruitless expense of considerable time and energy by the government in initiating criminal charges against O'Hara as well as deprived the citizens of an opportunity to successfully prosecute an individual guilty of criminal conduct. We believe the punishment in a case such as this should be greater than in cases where a witness has merely refused to testify before a grand jury.

A reviewing court cannot normally determine from an appellate record the seriousness of a defendant's transgressions, *United States v. Seale, supra,* 461 F.2d at 355, and we conclude there is no basis for finding an abuse of the sentencing discretion herein.

Therefore, the judgment of the district court is hereby AFFIRMED.

---

**12.** *See United States v. Bukowski,* 435 F.2d 1094 (7th Cir. 1970), *cert. denied,* 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971); *United States ex rel. Robson v. Malone,* 412 F.2d 848 (7th Cir. 1969).

**13.** 18 U.S.C. § 1621.

**14.** 18 U.S.C. § 1510.

**15.** Apparently the two counts against O'Hara based on Patrick's testimony were dismissed by the government upon Patrick's refusal to testify at trial.