**SCHURZ COMMUNICATIONS, INC., et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Nos. 91–2350, 91–1484, 92–1117, 91–2855, 91–2598, 91–2684, 91–2597, 92–1120, and 91–2883.**

United States Court of Appeals, Seventh Circuit.

Submitted Nov. 18, 1992.

Decided Nov. 23, 1992.

Amended, and Opinion Published, Dec. 8, 1992.

Order Denying Petition for Rehearing and Rehearing En Banc Feb. 16, 1993.

Gregory M. Schmidt, Martin Wald, Covington & Burling, Washington, DC, for petitioner CBS Television Network Affiliates Ass'n.

James F. Rill, Dept. of Justice, Antitrust Div., Robert Pettit, Daniel M. Armstrong (argued), Sue Ann Kanter, F.C.C., Washington, DC, for respondent F.C.C.

Catherine G. O'Sullivan, James F. Rill, Dept. of Justice, Antitrust Div., Appellate Section, Robert Pettit, F.C.C., Nancy C. Garrison, Dept. of Justice, Antitrust Div., Appellate Section, Washington, DC, for respondent U.S.

John D. Lane, Ramsey L. Woodworth, Robert M. Gurss, Wilkes, Artis, Hedrick & Lane, Washington, DC, for intervenor-respondent Program Producers and Distributors Committee.

Ian D. Volner, J. Brian DeBoice, Cohn & Marks, Washington, DC, for intervenor-respondent King World Productions, Inc.

James J. Popham, Ass'n of Independent Television Stations, Inc. Washington, DC, for intervenor-respondent Ass'n of Independent Television Stations, Inc.

Charles J. Sennet, David D. Hiller, Tribune Co., Chicago, IL, for intervenor-respondent Tribune Broadcasting Co.

George H. Shapiro (argued), Marilyn D. Sonn, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for intervenors-respondents Chris Craft Television, Inc. and United Television, Inc.

Robert J. Bates, Jr., Pope & John, Chicago, IL, for intervenor-respondent Channel 50 TV Corp.

Richard R. Zaragoza, Fisher, Wayland, Cooper & Leader, Washington, DC, for petitioner and intervenor-respondent FBC Television Affiliates Ass'n.

Richard E. Wiley, Lawrence W. Secrest, III, James R. Bayes, Ellen O. Kaden, Mark W. Johnson, Wiley, Rein & Fielding, Washington, DC, David L. Shapiro, Cambridge, MA, for petitioner and intervenor-respondent CBS Inc.

Michael Kellogg, Michael McConnell, Mayer, Brown & Platt, Howard Monderer, Nat. Broadcasting Co., Washington, DC, Richard Cotton, Nat. Broadcasting Co., New York City, for petitioner and intervenor-respondent Nat. Broadcasting Co., Inc.

J. Roger Wollenberg, Joel Rosenbloom, Irwin M. Rappaport, Jonathan Jacob Nadler, Wilmer, Cutler & Pickering, Washington, DC, for petitioner and intervenor-respondent Capital Cities/ABC, Inc.

John P. Cole, Jr., Cole, Raywid & Braverman, Washington, DC, for amicus curiae Media Institute.

William N. Farabaugh, Edward A. Chapleau, Farabaugh & Chapleau, South Bend, IN, for petitioner Schurz Communications, Inc.

Diane S. Killory (argued), Linda Calhoun, Susan H. Crandall, Morrison & Foerster, Michael R. Gardner, Steven S. Rosenthal, Morrison & Foerster, Washington, DC, for petitioner and intervenor-respondent Coalition to Preserve the Financial Interest and Syndication Rule.

John D. Lane, Ramsey L. Woodworth, Robert M. Gurss, Wilkes, Artis, Hedrick & Lane, Washington, DC, for intervenor-respondent Program Producers and Distributors Committee.

William S. Reyner, Jr. (argued), Mace J. Rosenstein, Hogan & Hartson, Washington, DC, for petitioner Fox Broadcasting Co.

Andrew J. Schwartzman, Gigi B. Sohn, Media Access Project, Washington, DC, for petitioner Ariz. Consumers Council.

POSNER, Circuit Judge (in chambers).

In *Schurz Communications, Inc. v. FCC*, 982 F.2d 1043 (7th Cir.1992), familiarity with which is assumed, a panel of which I was a member invalidated the new financial interest and syndication rules that the FCC had adopted in 1991, supplanting the original rules that had been promulgated in 1970. After the panel decision was rendered, counsel for outside producers and independent stations asked me to disqualify myself on the basis of 28 U.S.C. § 455(a), which requires disqualification if the judge's "impartiality might reasonably be questioned," and section 455(b), which so far as relevant here requires disqualification if the judge "has ... personal knowledge of disputed evidentiary facts concerning the proceeding" (§ 455(b)(1)) or "served as a lawyer in the matter in controversy ... or ... has been a material witness concerning it" (§ 455(b)(2)). The motion was addressed to me, not to the panel that decided the case or to the court as a whole. 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3550, at p. 629 (1984). "Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge." *United States v. Balistrieri*, 779 F.2d 1191, 1202–03 (7th Cir.1985). The other parties were invited to respond to the motion and, the deadline for responses having passed, the motion became ripe for decision. Although the FCC did not file its own motion for disqualification, in response to the motion that was filed it instructed its general counsel, by the same 3–2 vote that promulgated the rules that the panel invalidated, to support the motion. The networks oppose the motion.

I have decided to publish my ruling on the motion because of the press publicity surrounding the motion for disqualification, and the public attention that the panel decision received. (For precedent for publishing such an opinion, see *Laird v. Tatum*, 409 U.S. 824, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (memorandum of Justice Rehn-quist)—also a case in which a judge was asked to recuse himself because he had given expert testimony.) Originally released in typescript in order to dispel as promptly as possible any uncertainty that the motion had created concerning the future proceedings in this matter, this opinion contains corrections and other changes in response to the movants' petition for reconsideration filed on November 30 and hereby denied. At the movants' request, the petition for reconsideration was (before I acted on it) referred to the other judges on the panel, although the rules and operating provisions of the court make no provision for such a referral. The other judges have declined to consider the petition.

The exact relief sought by the motion is unclear and unspecified, the decision of the appeal having already been rendered (and by a unanimous panel). Do the movants want the case reargued before a different panel? Transferred to a different circuit? They do not say—and if that is what they want they have directed their motion to the wrong person, because I am not authorized, as a single member of the court, to give them such relief. Presumably they want (at the least) to disqualify me from participation in the still-pending proceeding concerning the scope of our final order, about which they express anxiety; the petition for reconsideration indicates that that is the only relief they seek.

The motion is based on an affidavit that I submitted as an expert witness on behalf of CBS in February 1977 (almost sixteen years ago) in an antitrust case that had been brought in a federal district court in California. See *United States v. National Broadcasting Co.*, 449 F.Supp. 1127 (C.D.Cal.1978). The present case is an administrative proceeding before the Federal Communications Commission that began in 1990 when the Commission initiated a notice-and-comment rulemaking proceeding to decide whether to adopt new rules governing network programming. Although the cases arose before different tribunals, under different statutes, in different decades, both involve the general question whether and how much the television networks

should be restricted from participating in the production and distribution of television programs.

The motion for disqualification is untimely. The movants acknowledge that they were aware of my affidavit in the antitrust case before the present case was argued orally on October 2. They were not aware until the morning of oral argument that I would be assigned to the panel to hear the case, because the practice of this court is not to announce the panel composition until the day of argument. But that practice, of which they do not claim to have been ignorant, was no impediment to their moving to disqualify me. A party who believes that one of the judges who might be assigned to hear a case would be required to disqualify himself should so inform the clerk of the court in advance. The clerk then informs the judge, and if the judge decides to disqualify himself he will be excluded from the pool from which (by a random procedure) judges are picked for the panel to hear the case.

I understand of course that the movants didn't want to interrupt the oral argument by asking me to disqualify myself. They would not have had to do that, even if they had failed to bring the matter to the court's attention earlier, because the case was not argued until the afternoon. And notwithstanding their having missed both opportunities to bring the matter to my attention before the argument, they could have filed a motion to disqualify me after the argument but before the decision. If they improbably feared that the case would be decided before they could draft and file the motion, they could have asked the court to delay its decision. In fact the court took more than a month to decide the case and during this period no motion to disqualify was filed. The movants followed none of the courses of action that was open to them. They waited until two weeks after the decision was handed down before filing the motion to disqualify.

That was too late. E.g., *United States v. Barnes*, 909 F.2d 1059, 1072 (7th Cir. 1990); *United States v. Patrick*, 542 F.2d 381, 390 (7th Cir.1976); *United States v.*

*York*, 888 F.2d 1050, 1053–55 (5th Cir. 1989). Litigants cannot take the heads-I-win-tails-you-lose position of waiting to see whether they win and if they lose moving to disqualify a judge who voted against them. The requirement of timeliness "prohibits knowing concealment of an ethical issue for strategic purposes." *Id.* at 1055. It is true that these cases involve the disqualification of a district judge rather than of a circuit judge, but I cannot see what difference that makes. It is also true that in *SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir.1977) (per curiam), a panel of this court held that there is no requirement of timely filing of motions to disqualify. The continuing validity of that decision was questioned in *United States v. Murphy*, 768 F.2d 1518, 1539 (7th Cir.1985), where we pointed out that "our decision [in *SCA Services*] stands alone," and likewise in *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F.2d 710, 716–17 (7th Cir.1986). *SCA Services* is a weak precedent because it had not cited *Patrick*, which had established the law of this circuit on the question. The *Barnes* decision (though distinguishable because based on 28 U.S.C. § 144, which contains an express requirement of timeliness when a motion to disqualify a district judge is based on actual bias) reaches back to *Patrick* to justify a requirement of timeliness. It is also true that a distinction might be made between disqualifying a judge retroactively and prospectively, the latter being a form of disqualification that would not affect the validity of his previous rulings in the proceeding. *United States v. Murphy, supra,* 768 F.2d at 1539.

Given *SCA Services*, it is certainly arguable that the requirement of a timely filing of a motion for disqualification is not firmly established in this circuit. The movants do not (or rather did not, till their petition for reconsideration) make this argument, however. The motion does not cite any of the cases relevant to the argument, or mention the principle for which they stand. (The motion cites *Murphy*, but not on the issue of timeliness.) It does not indicate whether the movants are seeking retroactive disqualification. The failure to bring pertinent authority to my attention could be thought to waive the issue, and the

movants' belated awakening to these authorities in the petition for reconsideration would not revive it. I do not want to base my ruling on a technicality, however, and I note that the motion may be referring (albeit obliquely) to the requirement of timeliness when it suggests that it was not until the panel handed down its decision that the movants were certain that I had to disqualify myself. What made them certain, they say, was the scope of the decision, and particularly the suggestion that the original financial interest and syndication rules, promulgated in 1970, might be unsound. This explanation is not satisfactory. The soundness of the 1970 rules was in the case from the start. For as part of the administrative decision under review by this court, the FCC had abrogated those rules and the very parties that have asked me to disqualify myself challenged the FCC's decision in this court precisely because it did abrogate those rules, which these parties asked us to restore at least in part. It is because the administrative decision struck down the old rules that the panel has asked the parties to brief the question whether our order vacating the decision should preserve the part of the order that invalidated those rules.

The question of timeliness to one side, the motion does not satisfy the standards for disqualification under 28 U.S.C. § 455. It is easier to begin analysis with section 455(b) because the standard under that subsection is more definite. I was not of course a lawyer or witness in "the matter in controversy"—that is, the 1990 proceeding before the FCC—unless (contrary to *Patterson v. Masem*, 774 F.2d 251, 254 n. 2 (8th Cir.1985)) the term is interpreted to embrace any related case. So interpreted I would be eternally disqualified from participating in antitrust or regulatory cases, because when I was a law professor I acted frequently as a consultant and occasionally as an expert witness in regulatory and antitrust matters that presented the same types of issue, often in the same industry, as do the cases that come before this court. No decision supports such an interpretation. As a detail, I point out that while the movants describe me as a "lawyer" for the network on whose behalf I filed the affidavit, I was not retained as, nor did I serve

as, a lawyer in that proceeding. As the affidavit recites, I was asked to read the publicly filed documents in the case and give my opinion, under oath, as an antitrust expert, on whether the proposed consent decree that the United States and NBC had agreed upon was in the public interest as expressed in the Sherman Act.

As for personal familiarity with facts in this proceeding, the movants speculate that I had learned the "fact" that large producers are better able to bear risk than small ones from the network on behalf of which I filed the 1977 affidavit. But the proposition that larger producers are better able to bear risk than small ones is a theoretical proposition having to do with the generally superior ability of large enterprises to bear risk. It is not some bit of inside industry dope whispered in my ear a decade and a half ago and carefully filed away in my long-term memory. I repeat that the affidavit was based on the publicly filed documents in the case and that I was not acting as a network lawyer privy to industry secrets but as a professor of antitrust law. To the best of my knowledge I received no information from the networks. I have no recollection of having received information from any source other than public documents.

That completes discussion of section 455(b). As for the question whether my participation in the present case is consistent with maintaining an appearance of impartiality (§ 455(a)), anyone who troubles to equip himself with all the facts bearing on the circumstances of my participation in this and the 1977 proceeding (the standard under section 455(a), *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, *supra*, 782 F.2d at 715; *United States v. Murphy*, *supra*, 768 F.2d at 1538; *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir.1985); 13A Wright, Miller & Cooper, *supra*, § 2549, at p. 612) will be satisfied that the affidavit was not an impediment to my, and that such an affidavit would not have been an impediment to any other judge's, judging the present case impartially. The lapse of time is of course one factor. Would a realistic observer think that an affidavit

filed so many years ago—an affidavit that I had not read since signing it until the movants submitted it with their motion—had cut such a deep groove in my thinking that I could not make an unbiased judgment in a different case, involving a different tribunal, a different statute, different facts, and different issues, in an industry much changed since the 1970s? My affidavit had expressed the view that the network activities in programming which the Justice Department had challenged did not violate the antitrust laws. The one point to which every party to the present proceeding assents is that the restrictions that the Commission's new rules impose on the networks are not supported by antitrust policy. The Commission defends them with reference to diversity and public interest factors not at issue in the antitrust proceeding or discussed in my affidavit.

The affidavit repeated views about antitrust policy that I had stated in many different fora over a period of years, and the movants do not and could not argue that a judge should disqualify himself because he has views on a case. 13A Wright, Miller & Cooper, *supra*, § 3542, at pp. 568–70. The principal factual issue that the movants consider the antitrust case and the present case to have in common—whether large producers can indeed share risk more efficiently than small ones—approaches a truism. The court in the present case did not find that the Commission was required to accept that truism or to adopt any particular economic theory, or any particular view of the operation of the television production and distribution markets, urged by any litigant. And the issue decided by the court was not even a substantive issue, let alone an issue of antitrust policy. It was a procedural issue—whether the Commission had complied with the requirement of reasoned explanation deemed implicit in the Administrative Procedure Act.

Would a reasonable person suppose that gratitude to a network for asking me to file an affidavit fifteen years ago, or dogmatic adherence to statements made in that affidavit and long forgotten, would prevent me

from judging impartially in a much different kind of case though one with undoubted thematic affinities to the case in which I filed my affidavit? I believe not and add that I did not and never have had an ongoing relationship with the network in question or any other network, or any other firm in the television or entertainment industries.

The movants cite no case similar to the present one. In particular they do not cite *Cipollone v. Liggett Group, Inc.*, 802 F.2d 658 (3d Cir.1986), the closest case that I have found. It was a products liability case against several cigarette manufacturers. One of the judges on the panel that decided the case had, fifteen years earlier (the same span of time as in this case), represented American Tobacco "in a case involving a similar products liability claim." *Id.* at 659. American Tobacco was not one of the defendants in *Cipollone*, but the court, in holding that the judge's participation in the decision of the appeal had not violated section 455(a), stated that "even if American Tobacco Company were a party to the Cipollone case, the long passage of time since Judge Hunter's last representation of that Company requires the conclusion that no reasonable person could question his impartiality." *Id.*

The motion for disqualification is DENIED.

## ORDER

Feb. 16, 1993.

On December 21, 1992, petitioners filed a petition for rehearing with suggestion for rehearing en banc. All of the judges on the original panel have voted to deny the petition, and none of the active judges [*] has requested a vote on the suggestion for rehearing en banc. The petition is therefore DENIED.

---

[*] Circuit Judges Walter J. Cummings, John L. Coffey, and Daniel A. Manion did not partici- pate in consideration of the suggestion for re- hearing en banc.