**UNITED STATES of America, Appellee,**

v.

**Arthur BERARDELLI, Defendant-Appellant.**

**No. 1274, Docket 77–1132.**

United States Court of Appeals, Second Circuit.

Argued June 10, 1977.
Decided Oct. 13, 1977.

---

Neal J. Hurwitz, New York City (Lawrence S. Bader, Segal & Hundley, New York City, of counsel), for defendant-appellant.

Jacob Laufer, Sp. Asst. U. S. Atty., Eastern District of New York, New York City (David G. Trager, U. S. Atty., Bernard J. Fried, Asst. U. S. Atty., Brooklyn, N. Y., Peter D. Sudler, Sp. Asst. U. S. Atty., Eastern District of New York, of counsel), for appellee.

Before FRIENDLY, TIMBERS and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Appellant Berardelli appeals from a judgment entered in the United States District Court for the Eastern District of New York after a two-day trial before Judge Bartels and a jury. He was found guilty of criminal contempt for refusing to testify at a criminal trial after being granted immunity and ordered to answer by Judge Bartels. We affirm the conviction.

## I. FACTS.

In late July of 1973, Berardelli was awaiting sentencing in two cases, Indictment Nos. 73 Cr. 471 and 73 Cr. 747, pending before Judges Carter and Gurfein of the Southern District. He was also awaiting trial on a third indictment, 73 Cr. 929, and was a defendant in a pending jury trial, *United States v. Marando,* Indictment No. 73 Cr. 79, which was pending before Judge Motley of the Southern District. In these cases, Berardelli and others were charged with mail and securities fraud. Shortly before the jury returned with its guilty verdict in *Marando,* counsel indicated that Berardelli "would be amenable to developing a cooperative relationship with the Government." After several interviews, the government decided that Berardelli would be of significant value in connection with the prosecution of Paul "Big Paul" Castellano, Angelo Scarpulla, Paul "Little Paul" Castellano and others for loansharking. Berardelli agreed to testify in this and other matters, and the government agreed to bring his cooperation to the attention of Judges Carter, Gurfein and Motley and to dismiss the Indictment in 73 Cr. 929. The government also gave Berardelli an informal promise of immunity in connection with his own loansharking activities, on the condition that he cooperate fully. Further, it was understood that the security of the Federal Witness Protection Program would be afforded to Berardelli and his family.

The Indictment in 73 Cr. 929 was dismissed, Judges Carter and Gurfein imposed only probationary sentences, and Judge Motley imposed a two-year sentence in the *Marando* case. The convictions in *Marando* were affirmed by this Court. 504 F.2d 126. Berardelli's petition for a writ of certiorari was denied. 419 U.S. 1000, 95 S.Ct. 317, 42 L.Ed.2d 275 (1974). The government joined in an unsuccessful motion for reduction of sentence made prior to Berardelli's surrender. It arranged for an expedited parole hearing, at which a Special Attorney from the Justice Department personally appeared and informed the parole board of Berardelli's cooperation. Special arrangements

were made to preserve Berardelli's security while he was incarcerated, and after he was released he was placed in the Witness Protection Program, which he left voluntarily.

Berardelli testified before State and Federal Grand Juries and was interviewed by investigatory agents and prosecutors on numerous occasions. As a result of information he gave, search warrants were executed and both court-ordered and consensual electronic surveillance was conducted—all in connection with the loansharking operation. On June 30, 1975, Indictment 75 Cr. 521 was filed in the Eastern District. It charged Castellano and others with operating an illegal loansharking enterprise, and it was based principally upon Berardelli's anticipated testimony. On one occasion Berardelli changed his mind about testifying, but after a brief period he changed it back again and reaffirmed his willingness to testify.

On November 8, 1976, after a jury had been impaneled, the *Castellano* case began before Judge Bartels. Two days later, Berardelli was called as the government's second witness and sworn. In response to the government's first question, he invoked his Fifth Amendment privilege against self-incrimination.[1] The government then sought and obtained from Judge Bartels an order of immunity under 18 U.S.C. § 6003. Berardelli persisted in his refusal to testify, even under the order of immunity, despite a direct order of the court to do so. He was found in civil contempt and was remanded for the duration of the trial or until he purged himself of the contempt. He was produced again on November 15, but he again refused to testify. As a result, the government failed to make out a prima facie case against the *Castellano* defendants, and the indictments had to be dismissed.

On November 17, 1976, Judge Bartels issued an order directing Berardelli to show cause why he should not be held in criminal contempt. The trial began on November 29, and the jury returned a verdict of guilty the next day. A sentencing hearing was conducted on February 9, 1977, and on March 4 Judge Bartels sentenced Berardelli to a five-year prison term. Berardelli is on bail pending this appeal.

## II. THE GRANT OF IMMUNITY.

Berardelli's principal claim is that his refusal to testify was justified because the immunity granted to him under 18 U.S.C. § 6002[2] was inadequate, on the facts of this case, to protect his rights under the Fifth Amendment. Specifically, he claims that if he had given truthful testimony at the *Castellano* trial, it would have been inconsistent with his testimony before the Grand Jury. Berardelli's fear was that the government would use his truthful, immunized testimony against him in a prosecution for either (1) perjury or making a false declaration before the Grand Jury, 18

---

1. Whatever else he may have done, Berardelli did not surprise the government. United States Attorney Trager applied to the Justice Department for permission to seek an order of immunity for Berardelli on November 1, and he gave as the reason the fact that it was "likely that [Berardelli] will refuse to testify on the basis of his privilege against self-incrimination." Approval was granted on November 5 by Assistant Attorney General Thornburgh, five days before Berardelli was called to the stand.

2. 18 U.S.C. § 6002 provides:
 *Immunity generally*
 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,
(2) an agency of the United States, or
(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, *except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.* (emphasis added).

U.S.C. §§ 1621, 1623(a),[3] or (2) making a declaration before the Grand Jury that was inconsistent with his testimony at the *Castellano* trial, 18 U.S.C. § 1623(c).[4] These prosecutions would be allowed, he argues, under the exception in the immunity statute for prosecutions for perjury and giving false statements. *See* note 2. We hold that Berardelli's fears were illusory and, therefore, that his refusal to testify was unjustified.

▇ Berardelli's first argument is based on an unduly broad reading of the exception in § 6002. That exception was included to make it clear that false testimony given under a grant of immunity was not immunized. *See United States v. Housand,* 550 F.2d 818, 822 (2d Cir. 1977); *United States v. Tramunti,* 500 F.2d 1334, 1344–46 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The immunity grant is only intended to protect

those who testify truthfully. *See United States v. Tramunti, supra,* 500 F.2d at 1342. A witness' truthful testimony, given under a grant of immunity, may not be used to prove either a later perjury, *Cameron v. United States,* 231 U.S. 710, 718–24, 34 S.Ct. 244, 58 L.Ed. 448 (1914), or, as here, an earlier perjury, *United States v. Alter,* 482 F.2d 1016, 1028 (9th Cir. 1973). Thus, Berardelli had all the protection to which he was constitutionally entitled in connection with any lies he may have told to the Grand Jury. He was, of course, not entitled to any immunity from prosecution for any lies he might have told at the *Castellano* trial. *Glickstein v. United States,* 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed. 128 (1911); *United States v. Tramunti, supra,* 500 F.2d at 1343.

▇ The possibility of an "inconsistent declarations" prosecution is more troublesome. The immunity statute excepts prose-

---

**3.** 18 U.S.C. § 1623 provides:

*False declarations before grand jury or court*

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

(b) This section is applicable whether the conduct occurred within or without the United States.

(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably

contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true.

(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such proof be made by any particular number of witnesses or by documentary or other type of evidence.

**4.** Berardelli also contends that "the immunity granted . . . would have permitted the government to use the grand jury statements, if false, in a later prosecution for false statements committed during his trial testimony." Brief for Appellant at 12. While this is true, Berardelli was not entitled to suppression of his non-immunized grand jury testimony, nor was he entitled to immunity from prosecution for perjurious trial testimony given pursuant to a grant of immunity under § 6002. *See Glickstein v. United States,* 222 U.S. 139, 142, 32 S.Ct. 71, 56 L.Ed. 128 (1911), and text discussion *infra.*

cutions for "giving a false statement," *see* note 2, and, under § 1623, which proscribes the making of "false declarations," it is unnecessary for the government to prove which of two inconsistent declarations was false. § 1623(c). If the government could have used Berardelli's truthful trial testimony to prove an "inconsistent declarations" case, then his apprehensions would not have been illusory, and his refusal to testify would have been justified. We hold that the immunity statute would not have permitted the use of Berardelli's trial testimony unless it were first shown to be false. Therefore, we conclude that Berardelli's refusal to testify was not excused.

 If the immunity statute created an exception for "false declarations" prosecutions, it would cover a prosecution for making "inconsistent declarations." Instead, § 6002 creates an exception for "perjury [and] giving a false statement." We think it is clear from this language that Congress intended to reach only those who lie when testifying under a grant of immunity. Because a prosecution for making an inconsistent declaration would not require proof that the testimony given under the grant of immunity was false, such a prosecution is not included in the exception and would be barred by the immunity statute. *Accord, United States v. Patrick,* 542 F.2d 381, 384–86 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977).

*United States v. Tramunti, supra,* does not require a different result. In that case, a criminal defendant elected to take the stand in his own defense. We held that his prior Grand Jury testimony, which had been given under a grant of use immunity eight years earlier, had properly been used to impeach his credibility. It had not been discovered that the prior testimony was immunized until after the trial. At that point, the trial judge had the benefit of hindsight in determining that the prior Grand Jury testimony was in fact false. Nothing in the *Tramunti* decision suggests that the result in that case would be the same if it could not have been independently determined that the immunized testimo-

ny was false. In *United States v. Moss,* 562 F.2d 155, 164–165 (2d Cir. 1977), this Court treated the *Tramunti* decision as being thus limited. The Third Circuit gave *Tramunti* the same reading in *United States v. Frumento,* 552 F.2d 534, 543 n.16 (3d Cir. 1977); *cf. United States v. Housand, supra,* 550 F.2d at 822–23 & nn.8 & 9. *Tramunti* was correctly interpreted in *Housand, Moss* and *Frumento,* and it does not prevent us from embracing the sound principles adopted by the Seventh Circuit in *Patrick.*

## III. PRE–TRIAL MOTIONS.

On the first day of Berardelli's contempt trial, before the jury was called, but after his legal arguments concerning the scope of his immunity were rejected by Judge Bartels, Berardelli's counsel made two last-minute motions, the denials of which are urged as reversible error on this appeal. The first was a motion for a continuance. The basis for the motion was counsel's contention that, although he was prepared for a non-jury trial for a contempt punishable by a sentence of up to six months, he was unprepared for a jury trial where the possible punishment may exceed six months. The second was a motion for the disqualification of Judge Bartels on the ground that he had a preconceived belief in the defendant's guilt.

 "The matter of continuance is traditionally within the discretion of the trial judge . . . ." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). That discretion was not abused here. This case was a simple one, and counsel was admittedly prepared to try it before Judge Bartels alone. In terms of the preparation required of counsel for the trial of this case, the differences between a jury trial and a non-jury trial are insubstantial. Indeed, the government's case consisted wholly of transcripts of the Castellano proceedings during which Berardelli refused to testify and during which trial counsel was present. To the extent that Berardelli's argument is premised upon the rather disturbing suggestion that trial counsel's preparation might have varied in proportion to the prospective sentence, it was properly rejected.

■ The motion for disqualification was also properly denied. The contempt charged did not involve "disrespect to or criticism of a judge," calling for disqualification under Fed.R.Crim.P. 42, and there was no showing of "personal bias or prejudice." 28 U.S.C. § 144. For the first time on appeal, Berardelli complains that the trial judge's "aggressive questioning" conveyed to the jury an appearance of partiality. It is entirely appropriate for a trial judge to ask questions. *See United States v. Natale,* 526 F.2d 1160, 1170 (2d Cir. 1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). Judge Bartels' questioning certainly did not "reach the point at which it appears clear to the jury that the court believes the accused is guilty." *United States v. Nazzaro,* 472 F.2d 302, 303 (2d Cir. 1973). To the extent that his questioning may have given rise to any misimpression in the minds of any of the jurors concerning his neutrality, that misimpression was erased when he charged the jury that he expressed no opinion as to the defendant's guilt or innocence and instructed them to ignore completely any indications to the contrary.

## IV. THE COURT'S CHARGE.

■ Berardelli's challenges to the court's charge are based on an erroneous view of the essential elements of criminal contempt. According to Berardelli, "the jury in a criminal contempt case must find not only that the defendant intended to disobey the court's order but also that he had the specific intent to disobey *the law.*" Brief for Appellant at 23 (emphasis in original). Judge Bartels refused to charge the jury to that effect, and Berardelli claims that this was error. It was not. "[T]he crime of criminal contempt requires a specific intent to consciously disregard an or-

der of the court." *United States v. Patrick,* 542 F.2d 381, 389 (7th Cir. 1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *see United States v. Panico,* 308 F.2d 125, 128 (2d Cir. 1962), *vacated on other grounds,* 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963). There is no requirement that the defendant be shown to have known of, and intended to violate, the statute which makes it a crime to consciously disregard an order of the court. In essence, Berardelli sought a charge to the effect that ignorance of "the law" would be a defense.[5] Judge Bartels was correct in refusing to give such a charge.

Berardelli also argues that the trial judge erred in refusing to instruct the jury that "[i]f defendant believed he did not get sufficient immunity [due to confusion or misunderstanding], he was entitled to assert the fifth amendment." Brief for Appellant at 24. The government responds that Berardelli's beliefs, whether held in good faith or not, are immaterial because, under *United States v. United Mine Workers of America,* 330 U.S. 258, 303, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947), "[o]ne who defies the public authority and willfully refuses his obedience, does so at his peril." We need not reach this issue, however, for our reading of the court's charge convinces us that the court erred, if at all, in Berardelli's favor. The jury was specifically told:

> [I]f you find that [Berardelli] didn't understand the extent of his immunity or didn't understand the Court's orders you, of course, can't find that he willfully and knowingly disobeyed the Court's orders.

Thus, this second claim of error is baseless, because the trial judge charged the jury in substantially the manner requested by the defense.[6]

## V. THE SENTENCE.

■ Berardelli also claims that his five-year sentence is excessive and therefore

---

5. The charge as to willfulness requested by Berardelli was as follows:

Knowledge that ones [sic] act is wrongful and a purpose to nevertheless do the act, are prerequisites to criminal contempt. Good faith pursuant of a plausible though mistaken alternative is sufficient to negate the intent to commit criminal contempt. And proof be-

yond a reasonable doubt that the defendant possessed the required intent must be shown to convict of criminal contempt.

6. Berardelli's request to charge as to the grant of immunity was as follows:

If you find that the defendant under the particular circumstances of this case was confused by instructions and remarks of the

should be reduced. The government concedes, as it must, that this Court has the power to revise a criminal contempt sentence imposed under 18 U.S.C. § 401(3). *Green v. United States*, 356 U.S. 165, 188, 78 S.Ct. 632, 2 L.Ed.2d 672 (1958). While it is true that the five-year sentence was severe, it was amply justified by appellant's conduct. Before passing sentence, Judge Bartels outlined at length the facts upon which he based his decision. There is no suggestion that his recitation was in any respect inaccurate. On this appeal it is suggested that we should consider other factors, such as Berardelli's lack of malicious intent, the fact that he acted on advice of counsel and the fact that he "may very well have been motivated in part by fear for personal safety and that of his family." Brief for Appellant at 20–21. However, these and the other factors mentioned are not borne out by the record. Berardelli's mental state, for example, was clearly evinced by the fact that he waited until after the *Castellano* jury was impaneled before refusing to testify, thereby allowing jeopardy to attach and precluding a retrial. Berardelli claimed that the primary reason for his refusal to testify was not so much his fear for his own or his family's safety or of a perjury prosecution but rather his wish not to displease his wife by testifying against members of her family, at least two of whom were defendants in the *Castellano* trial. She had called him a "rat," opined that his cooperation was "wrong" and threatened to leave him if he testified. Even if this were to be credited, and it is hard to reconcile with the timing of Berardelli's refusal, we concur with Judge Bartels' view that:

> This is a particularly flagrant case of contempt which has caused a loss of time and energy not only on the part of the government and its agents, but also on the part of the Court. This prosecution

has also cost the government a considerable amount of money—all to no avail.

It is my opinion that conduct like this really threatens the very 'fabric of the administration of justice.

The judgment of conviction and sentence are affirmed.

Court as to the extent of the immunity granted him, that the defendant understood or misunderstood the instructions or remarks of the judge to mean that he was not completely protected from possible later prosecution,

you must take such confusion, understanding or misunderstanding into consideration when deciding the question of whether defendant wilfully and knowingly disobeyed the order of the Court directing him to testify.