577 F.2d 119
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert DUNN, Defendant-Appellant.
 No. 77-1398.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted April 21, 1978.
Decided June 5, 1978.
Rehearing Denied June 22, 1978.
 
 Daniel J. Sears, Federal Public Defender, Denver, Colo., for defendant-appellant.
 Edward F. Nottingham, Asst. U. S. Atty., Denver, Colo. (with Joseph F. Dolan, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.
 Before BARRETT, DOYLE and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Robert Dunn appeals from his conviction of making false statements before a grand jury in violation of 18 U.S.C. § 1623.
 
 FACTUAL BACKGROUND :
 
 2
 In June 1976, under a grant of immunity pursuant to 18 U.S.C. § 6002, Dunn presented testimony to a grand jury investigating illegal drug activity in the Colorado State Penitentiary. Dunn's testimony implicated Phillip Musgrave in the crimes under investigation. Following the grand jury proceeding, Musgrave and others were indicted on charges of conspiring to manufacture and distribute controlled substances. (United States v. Musgrave, et al., No. 76-Cr-155.)
 
 
 3
 Subsequently, in September 1976, Dunn appeared in the office of Michael Canges, attorney for Phillip Musgrave. In the presence of Canges and Gerald Cohen, a notary public, Dunn gave an oral statement under oath which was recorded and transcribed wherein he recanted his grand jury testimony implicating Musgrave. (Vol. I at 74-83; Vol. II at 144-147). Dunn stated that much of what he had previously told the grand jury was not true. (Vol. I at 68-73). At the time Dunn made the statement, he was not represented by counsel. However, there is nothing in the record which indicates that Dunn could not have appeared with counsel or that his statement was not completely voluntary. Dunn was fully cognizant that Canges was representing Musgrave.
 
 
 4
 Thereafter, Michael Canges notified the United States Attorneys' office of Dunn's recantation of his grand jury testimony. Canges filed a transcript of Dunn's sworn statement with the district court wherein the Musgrave prosecution was pending. Motions were filed on behalf of Musgrave and others challenging the indictments on the basis that such indictments had been returned predicated on false grand jury testimony. An evidentiary hearing on these motions was held before Judge Winner in October 1976. At that time Dunn, who was then represented by counsel, reaffirmed under oath that he had lied to the grand jury. His testimony of course, was duly reported and transcribed. As a result, the charges against Musgrave were subsequently reduced.
 
 
 5
 Thereafter, Dunn was indicted and charged with five counts of making false statements to a grand jury in violation of 18 U.S.C. § 1623. The evidence against Dunn admitted at trial included: Dunn's grand jury testimony, Dunn's Canges statement, and relevant portions of Dunn's testimony at the Musgrave motion hearing. At Dunn's trial, testimony was given by the notary public who had administered the oath to Dunn in Canges' office, and by the United States Attorney in charge of the grand jury proceeding. The jury found Dunn guilty on three counts of perjury before the grand jury.
 
 
 6
 On appeal Dunn contends that the trial court erred in 1) ruling that the proceeding in Canges' office was a proceeding ancillary to a court or grand jury of the United States, and 2) ruling that immunized grand jury testimony could be used to establish the corpus delicti in an inconsistent declarations prosecution.
 
 PRELIMINARY DISCUSSION :
 
 7
 Before proceeding to the specific issues at hand, it is necessary to discuss in some detail the pertinent statutes and the indictment as drafted against Dunn, as such have a significant bearing upon the specific issues raised on appeal.
 
 
 8
 18 U.S.C. § 1623, captioned "False declarations before a grand jury or court " provides that:
 
 
 9
 "(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both."
 
 
 10
 18 U.S.C. § 1623(c), outlines a statutory method of charging a witness with violating § 1623(a):
 
 
 11
 "(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false . . ."
 
 
 12
 In addition, § 1623(c) sets forth a method for proving false declarations:
 
 
 13
 "In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury."
 
 
 14
 Thus, § 1623(c) eliminates the two witness rule which is otherwise required to prove perjury. The government need not prove which of the declarations was false through extrinsic evidence, but rather, the falsity of one of the two declarations is inferred from their inconsistency with each other. United States v. Slawik, 548 F.2d 75 (3rd Cir. 1977); United States v. Patrick, 542 F.2d 381 (7th Cir. 1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775.
 
 
 15
 Turning now to the government's indictment of Dunn, all counts of the indictment read that:
 
 
 16
 "On June 16, 1976, at Denver in the District of Colorado, ROBERT DUNN, while under oath as a witness in a proceeding before a grand jury of the United States in the District of Colorado, did knowingly make a false material declaration . . . in violation of Title 18, U.S.C. § 1623."
 
 
 17
 The indictment quotes the appropriate portions of Dunn's initial grand jury testimony from a certified transcript wherein Dunn made statements implicating Musgrave. The indictment also quotes statements contradicting Dunn's grand jury testimony made in Canges' office. The concluding portion of each count against Dunn included this language:
 
 
 18
 "6. The aforesaid declarations by ROBERT DUNN, as set forth in paragraphs (4) and (5) of this count were inconsistent to the degree that one of said declarations was false and known by him to be false when made."
 
 
 19
 In the preliminary stages of the proceedings below, Dunn moved for a bill of particulars to determine which statements the government intended to prove were false. The need for clarification is obvious. As quoted above, each count of the indictment specified that during Dunn's appearance before the grand jury in June, 1976 he knowingly made false material declarations. On the other hand, the concluding portion of each count indicated that the government was relying on 18 U.S.C. § 1623(c), where, as explained above, inconsistencies between Dunn's grand jury testimony and Dunn's Canges statement would be sufficient to prove the falsity of one or the other of them.
 
 
 20
 In response to Dunn's request for a bill of particulars, the government claimed to rely upon § 1623(c). The government and Dunn proceeded upon this theory of the case. For example, Dunn's counsel properly concluded that evidence to show that Dunn's June grand jury testimony was in fact true would be irrelevant in a § 1623(c) prosecution. (Vol. II at 87, 113-114, 127-128, 153, 168). Of course, if the government had not chosen to proceed upon the inconsistent declarations theory, the government would have had to state which statements it intended to prove false, and Dunn's defense would have been to demonstrate that in fact such specified testimony was true. In addition, the jury was properly instructed that under 1623(c) the jury need not find which of the statements, that is, Dunn's June grand jury testimony or Dunn's Canges statement, was false, but rather that the jury need only find that the statements were so inconsistent that one had to be false. (Vol. II at 179).
 
 CANGES' STATEMENT
 
 21
 Dunn's first argument is that the proceedings in Canges' office did not constitute a proceeding ancillary to a grand jury or court proceeding so as to come within the meaning of § 1623(a) and (c).
 
 
 22
 The term "ancillary proceeding" has seldom been construed. Nor has the question of what other statement may be used to show inconsistency with grand jury testimony. "Ancillary proceeding" is generally defined as "one subordinate to or in aid of another primary action". Black's Law Dictionary (4th Ed. 1968) at 112.
 
 
 23
 In the absence of a clear meaning for the term "ancillary proceeding", Dunn argues that his statement made in Canges' office was not taken in a proceeding before or ancillary to the grand jury. He argues that Gerald Cohen was not an officer for the United States District Court for the District of Colorado such that a statement taken by him could be ancillary to the federal court proceedings in United States v. Musgrave, and stresses that he was not advised of his rights nor was counsel present. Dunn analogizes to 18 U.S.C. § 3503, which provides the method for taking depositions of unavailable witnesses, and implies that procedures more closely adherent to those outlined in § 3503 may be found to be ancillary to a grand jury proceeding.
 
 
 24
 On the other hand, the government submits that Dunn's affidavit in Canges' office was taken in a proceeding ancillary to the grand jury proceeding, where the testimony was given under oath, administered by a notary public authorized to do so, where the testimony was taken in the office of an attorney of a defendant in a federal court proceeding, and where the affidavit was filed in that court proceeding and influenced the outcome of that proceeding.
 
 
 25
 This court has concluded that while the Canges statement is "ancillary", in the sense that it is connected to and had an effect upon the grand jury proceeding, the event occurring in Canges' office, in and of itself, is not a "proceeding" within the meaning of the statute so as to be a proceeding ancillary to a grand jury proceeding. Despite the administration of the oath and presence of the notary public, we hold that the event lacks the degree of formality the statute requires.
 
 
 26
 The court further concludes that Dunn's subsequent affirmation of his Canges statement, in the course of the hearing conducted in the district court on Musgrave's motion to dismiss the indictment, clearly constitutes a proceeding ancillary to the grand jury proceeding. Thus, the admission into evidence of Dunn's testimony during the hearing on Musgrave's motion was proper in that it constituted an affirmation and adoption of the Canges statement, supportive thereof and cumulative in nature.
 
 
 27
 Furthermore, the admission into evidence of Dunn's testimony given at the Musgrave hearing does not create a fatal variance between proof at trial and the indictment. This court has consistently held that a variance between the indictment and evidence is not fatal unless the defendant could not have anticipated from the indictment what evidence would be presented at trial or unless the conviction based on an indictment would not bar a subsequent prosecution. United States v. Cowley, 452 F.2d 243 (10th Cir. 1971); United States v. Freeman, 514 F.2d 1184 (10th Cir. 1975). Clearly, where Dunn's testimony in the Musgrave motion hearing was inextricably related to his Canges statement, that is, affirming the truth of the latter, it cannot be said that Dunn could not have anticipated that such evidence would be presented against him at his perjury trial.
 
 
 28
 Finally, the court has also considered whether the indictment brought against Dunn meets the standards for sufficiency of an indictment as set forth in United States v. Radetsky, 535 F.2d 556 (10th Cir. 1976). The government has repeatedly stated its reliance upon § 1623(c) in this case. Therefore, to state an offense under that statute, the government had to allege inconsistent statements by Dunn made in one or more proceedings ancillary to a grand jury or court. In the indictment the government pleaded Dunn's grand jury testimony and Dunn's Canges statement, the latter of which we have determined is in and of itself not taken in a proceeding ancillary to the grand jury. While Dunn's testimony at the Musgrave hearing is clearly taken in a proceeding ancillary to the grand jury the government completely failed to plead such testimony in the indictment.
 
 
 29
 However, the sufficiency of an indictment is to be determined by practical rather than technical considerations, United States v. Crim, 527 F.2d 289 (10th Cir. 1976), cert. denied, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755. Viewed in this practical light, where excerpts from the Canges statement was necessarily included in the indictment to establish "inconsistency", and where the Canges statement was inextricably related to Dunn's testimony in the Musgrave hearing which was taken in an ancillary proceeding, we hold that the indictment sufficiently states an offense under § 1623(c).
 
 GRAND JURY TESTIMONY :
 
 30
 Having established by response to the bill of particulars that the government intended to prove a violation of § 1623(a) through the use of the method prescribed in § 1623(c), Dunn contends that immunized grand jury testimony may not be used to establish the corpus delicti of a prosecution for inconsistent declarations without a prior showing of its falsity.
 
 
 31
 Prior to his testimony before the grand jury, Dunn was granted immunity in accord with 18 U.S.C. § 6002 which provides:
 
 
 32
 "(N)o testimony or other information compelled under the order may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."
 
 
 33
 It is hornbook law that testimony given by a witness under a grant of immunity cannot be used to incriminate him in crimes or activities concerning which he gives testimony. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). However, the grant of immunity is never a license to commit perjury. In United States v. Tramunti, 500 F.2d 1334, 1343 (2nd Cir. 1974), cert. denied, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673, the court stated:
 
 
 34
 "The immunity granted by the Constitution does not confer upon the witness the right to perjure himself or to withhold testimony. . . . The very purpose of the granting of immunity is to reach the truth and when that testimony is incriminatory, it cannot be used against him. If the witness thwarts the inquiry by evasion or falsehood, as the appellant did here, such conduct is not entitled to immunity. In fact, another crime not existing when the immunity was offered is thereby committed. The immunity does not extend in futuro."
 
 
 35
 Neither the Fifth Amendment nor statutory immunity offers a witness protection against prosecution for perjury, United States v. Frumento, 552 F.2d 534 (3rd Cir. 1977). In United States v. Mandujano, 425 U.S. 564, 576, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976), Chief Justice Burger, speaking for the court, described the sanctions available to the government when an immunized witness commits perjury:
 
 
 36
 "On the other hand, when granted immunity, a witness once again owes the obligation imposed upon all citizens the duty to give testimony since immunity substitutes for the privilege."In this constitutional process of securing a witness' testimony, perjury simply has no place whatever. Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative. The power of subpoena, broad as it is, and the power of contempt for refusing to answer, drastic as that is and even the solemnity of the oath cannot insure truthful answers. Hence, Congress has made the giving of false answers a criminal act punishable by several penalties; in no other way can criminal conduct be flushed into the open where the law can deal with it."
 
 
 37
 § 1623 is a species of perjury. Its enactment was intended to facilitate perjury prosecutions and establish a new false declaration provision applicable to federal grand jury and court proceedings. United States v. Gross, 511 F.2d 910 (3rd Cir. 1975), cert. denied, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249; Organized Crime Control Act, Title IV, 1970 U.S. Code Cong. and Admin.News at 4007, 4008.
 
 
 38
 We feel that Congress intended to include § 1623 false declarations prosecutions within the perjury exceptions to the immunity grant of § 6002. But see United States v. Berardelli, 565 F.2d 24, 29 (2nd Cir. 1977). Such interpretation is in the spirit of the perjury statutes, to insure against wrongs to the court and to meet the ends of justice. Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973). We observe that it would be an affront to the basic purpose of the criminal justice system to permit one to avoid likely prosecution under the grant of immunity. The import of statements made in the context of a grand jury proceeding were recognized by the Supreme Court in United States v. Harris, 311 U.S. 292, 61 S.Ct. 217, 85 L.Ed. 196 (1940):
 
 
 39
 Section 125 of the Criminal Code makes no distinction between the false assertions of the fact of prior statements and the false assertions of any other fact. Nor can we see any reason to make one. As the Government points out, the denial of the fact that certain statements have been made may be equally as clear, deliberate, and material a falsehood as the denial of any other fact. And since statements made to government agents are generally one of the bases upon which criminal proceedings are instituted and indictments returned, such a distinction might substantially impede effective administration of criminal law. (Emphasis supplied.)
 
 
 40
 311 U.S. at p. 295, 61 S.Ct. at p. 218.
 
 
 41
 We have carefully studied the cases relied upon by Dunn, including United States v. Patrick, 542 F.2d 381 (7th Cir. 1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); United States v. Housand, 550 F.2d 818 (2nd Cir. 1977), cert. denied, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); and United States v. Berardelli, supra. These cases involve the interrelationship between § 6002 immunity, the Fifth Amendment, and § 1623(c) inconsistent declarations prosecutions. Arising in different factual contexts, these decisions basically stand for the general proposition that immunized testimony may not be used to establish the corpus delicti of an inconsistent declarations prosecution without a prior showing of falsity.
 
 
 42
 However, unlike the fact situations of the above decisions relied upon by Dunn, Dunn's subsequent testimony in his Canges affidavit and in the Musgrave motion hearing not only were inconsistent with his immunized grand jury testimony, but, significantly, contained Dunn's admission that he had in fact testified falsely before the grand jury. Even though we have held that the government need not prove which of Dunn's statements were false for purposes of sustaining his conviction under § 1623(a), (c), and while we do not decide whether, under other circumstances, immunized testimony may be admitted to demonstrate inconsistency without a prior showing of falsity, in our view Dunn's unequivocal admission that his immunized testimony before the grand jury was false justified the use of such immunized testimony to establish the corpus delicti of the present prosecution.
 
 
 43
 Immunity statutes are, of course, ordinarily for the benefit of the government, designed to effectively serve the compelling needs of the criminal justice system by preventing a substantial avoidance of prosecution and penalty. Dunn has grossly abused those purposes. In Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963), the Supreme Court said, inter alia :
 
 
 44
 . . . Plainly the offer of immunity contained in the voluntary disclosure policy presupposed, at the very least, that a delinquent taxpayer would make a "clean breast of things". . . . (in) deciding whether to disclose or run the risk of prosecution petitioners were initially justified in relying on the Treasury's general offer of immunity . . . once a fraudulent disclosure had been determined upon they must be deemed to have recognized that such an offer had in effect been withdrawn as to them or, amounting to the same thing, that they were no longer entitled to place reliance on it. Petitioners are thus in legal effect left in no better position than they would have been had the Treasury formally withdrawn its offer of immunity before their disclosure figures were furnished. (Underlining supplied.)
 
 
 45
 371 U.S. at pp. 349, 350, 83 S.Ct. at p. 454.
 
 
 46
 In the instant case, Dunn's recantation was, in an analogy to Shotwell, supra, an admission that he had not made a "clean breast of things" in his immunized testimony before the grand jury which implicated Musgrave. Thus, such false testimony stripped him of the cloak of immunity which he was initially entitled to rely upon. Dunn's recantation thus as in Shotwell in legal effect left him in no better position than he would have been in had the Government formally withdrawn its offer of immunity before he testified before the grand jury.
 
 
 47
 WE AFFIRM.