UNITED STATES of America

v.

James D. HOCKENBERRY, Appellant.

No. 72–1425.

United States Court of Appeals,
Third Circuit.

Argued Oct. 3, 1972.

Decided Feb. 21, 1973.

Louis Lipschitz, Philadelphia, Pa., and Stanton D. Levenson, Watzman, Levenson & Snyder, Pittsburgh, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., James A. Villanova and Kathleen K. Curtin, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.

Before SEITZ, Chief Judge, and HASTIE and HUNTER, Circuit Judges.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

James Hockenberry, a former county detective, has taken this appeal from his conviction of making a false material declaration under oath before a grand jury in violation of the recently enacted section 1623 of Title 18, United States Code. 84 Stat. 932. Hockenberry had testified before the grand jury only under judicial compulsion after he had been granted immunity under section 2514 of Title 18, United States Code. We must decide whether the trial judge committed reversible error in admitting into evidence against the accused at his perjury trial a truthful statement he had made to the grand jury on the same occasion as the alleged false statement but unrelated to it.

The indictment charged Hockenberry with falsely swearing to the grand jury that he had no knowledge of or connection with bribes or payoffs to county detectives by persons engaged in unlawful gambling and prostitution. At his trial he took the stand in his own defense and denied any such knowledge or connection. In an effort to discredit him as a witness, the prosecution cross-examined him, over objection, about other unrelated parts of his testimony before the grand jury. Part of the cross-examination was as follows:

"Q. Well, do you recall appearing before the Grand Jury on the 16th of March, 1971, and my questioning you about certain returns on search warrants that you have executed under oath?

"A. I recall that, yes.

"Q. You do recall?

"A. Yes.

"Q. Do you recall testifying that there were at least two instances that you had executed a sworn return on those search warrants, and the information in it was false?"

Then, after an objection had been overruled, the prosecution read two excerpts from Hockenberry's grand jury testimony in which he admitted that on occasion, in the course of his work as a detective, he had signed affidavits wherein he falsely asserted personal knowledge of facts upon which search warrants were being sought.

It was the contention of the prosecution that appellant's admission before the grand jury—stating that on occasion he signed false affidavits to obtain search warrants—could be introduced to impeach him as a witness. The prosecution reasoned that this evidence was relevant and competent to show a "pattern of deceit" and thus discredit Hockenberry's denial at trial that he had lied to the grand jury about the unrelated matter of accepting bribes from criminals.

Assuming that the law of evidence would permit such impeachment, there is a separate question whether this use of admissions made before the grand jury violated the immunity under which the admissions had been compelled. Hockenberry originally had refused to testify before the grand jury, claiming Fifth Amendment privilege. He then was granted immunity under 18 U.S.C.

§ 2514 and ordered to testify. The admissions here in question were part of that testimony.

After prescribing a procedure for compelling testimony, section 2514 continues as follows:

" . ' . . No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

In this case appellant's statements before the grand jury, truthful admissions of prior wrongdoing compelled under grant of immunity, certainly were used against him, since they were used to impeach his credibility as an accused person testifying in his own defense. Attempting to justify this disallowance of immunity, the government has found it necessary to argue that the use made of Hockenberry's otherwise immunized testimony comes within the exception stated in the above quoted concluding provision of section 2514. The government reads that exception as meaning that, in a prosecution for perjury allegedly committed in the course of testimony required pursuant to section 2514, the statutory immunity does not cover either the allegedly false statement itself or anything else the accused may have said on the protected occasion. However, we think the exception is not that broad.

Under the narrowest arguable reading of the Fifth Amendment, Hockenberry was compelled to incriminate himself when he was required to admit before the grand jury that he had executed false affidavits to obtain search warrants. However, Congress had authorized and the courts have sanctioned judicial compulsion of otherwise self-incriminating testimony so long as full protection is given the witness against injury through future incriminating use of the compelled statement. Kastigar v. United States, 1972, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. "Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying.". Gardner v. Broderick, 1968, 392 U.S. 273, 276, 88 S.Ct. 1913, 1915, 20 L.Ed.2d 1082.

▪■ But quite apart from any question of self incrimination, a witness who testifies before a grand jury is required and sworn to tell the truth. The grant of immunity is superimposed upon that requirement. Protection is granted against future injurious use of the incriminating truth that the witness is required to speak, not against prosecution for or the use of any exculpatory falsehood that he may utter to avoid the required admission of wrongdoing. Hence, the immunity statute properly permits prosecution for perjury committed in an otherwise immunized statement and also the introduction in evidence of so much of the statement as is essential to establishing the *corpus delicti*.

■ To go beyond that and to argue, as the government does,[1] that the immunity statute allows the use of any truthful admission of wrongdoing made in an immunized statement to discredit the individual as a witness in a subse-

---

1. In its brief the government argues that "[t]he better rule . . . is to permit the use of testimony obtained under an immunity grant, where otherwise relevant and admissible, for the purpose of impeaching the immunized witness or an immunized defendant when (as here) he chooses to testify on his own behalf".

quent prosecution, so narrows the statutory grant of immunity as to jeopardize its adequacy as a constitutional means of requiring self incrimination. But for the grant of immunity Hockenberry would have been privileged to refuse to admit to the grand jury his wrongdoing in the execution of affidavits to obtain search warrants. And if immunity that deprived him of that privilege is to be, as constitutionally it must, co-extensive with the privilege itself, his compelled admission of wrongdoing cannot later be used to discredit his effort to defend himself against a charge of some other wrongdoing. "Immunity from the use of compelled testimony . . . prohibits the prosecutorial authorities from using the compelled testimony in *any* respect . . ." Powell, J., in Kastigar v. United States, *supra*, 406 U.S. at 453, 92 S.Ct. at 1661.

Finally, we have not overlooked the government's reliance upon Harris v. New York, 1971, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, as supportive of what was done in this case. The *Harris* case holds that an arrested person's voluntary incriminating statements, though inadmissible later as part of the prosecution's case in chief because the prisoner had not been advised of his right to counsel, may be used to impeach his credibility when he testifies as a witness in his own defense. In that case the Court was deciding how broad a sanction is necessary to vindicate the *Miranda* procedural requirement that an arrested suspect must be advised of his right to counsel before he shall be interrogated.

In contrast, the question here is the scope of the use immunity that government must afford and the Congress has undertaken to grant a witness in order to justify compelling him to make an incriminating statement. In this situation, as we already have pointed out, the mandated *quid pro quo* is immunity co-extensive with the privilege; to-wit, immunity from any damaging use of the

compelled truthful statement in a future prosecution. The *Harris* rule does not compel a person to incriminate himself. The abridgement of immunity in this case does, and that is its invalidating vice.

Hockenberry's conviction must be set aside and the cause remanded for a new trial.