**Gerald L. SHARGEL, Attorney in behalf of Vincent Aloi, Petitioner,**

v.

**Charles E. FENTON, Warden of the Federal Penitentiary at Lewisburg, as Agent for the State of New York and Louis J. Lefkowitz, Attorney General of the State of New York, Respondents.**

No. 78 Civ. 1218 (GLG).

United States District Court,
S. D. New York.

Oct. 13, 1978.

As Amended Oct. 31, 1978.

Fischetti & Shargel, New York City, for petitioner by Gerald L. Shargel, New York City, of counsel.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendant Fenton by Thomas E. Moseley, Asst. U. S. Atty., New York City.

Robert M. Morgenthau, Dist. Atty., New York County, New York City, for defendant Lefkowitz, New York City by Robert M. Pitler, Henry J. Steinglass, Asst. Dist. Attys., New York City, of counsel.

## OPINION

GOETTEL, District Judge:

In this habeas corpus action under 28 U.S.C. § 2241, petitioner Aloi [1] seeks to vacate his New York State perjury conviction and the accompanying detainer now lodged against him. Petitioner alleges that his conviction violated both his Fifth Amend-

ment right against self incrimination and his right to due process of law under the Fourteenth Amendment to the United States Constitution.

Aloi appeared under subpoena on November 28, 1972 before a New York County Grand Jury investigating the killing of Joseph Gallo. Upon his refusal to sign a waiver of immunity petitioner automatically received transactional immunity pursuant to New York Criminal Procedure Law § 190.40 (McKinney 1971). Following this grant of immunity, petitioner testified that he had never visited a certain apartment in Nyack, New York, allegedly the meeting place for the planning of Gallo's murder and the subsequent attempts to conceal the identity of the perpetrators. As a result of this denial, petitioner was indicted for perjury in the first degree.[2]

At the perjury trial in June, 1973, a number of witnesses testified as to Aloi's presence in the Nyack apartment. In addition, the prosecution, over the objection of defense counsel, introduced into evidence almost all of Aloi's immunized grand jury testimony. Much of this material contained statements far beyond the corpus delicti of the perjury, including many questions relating to the nature of petitioner's employment that attempted to characterize the petitioner as an organized crime figure.[3] The trial court allowed this material into evidence for the purpose of determining the materiality of the allegedly perjurious statement to the grand jury's investigation. Petitioner contends that the introduction of these minutes constituted both an impermissible use of compelled testimony in derogation of his Fifth Amendment right against self incrimination, and so prejudiced the jury as to make impossible a fair trial, in violation of the Due Process Clause of the Fourteenth Amendment.

Petitioner was convicted in New York State Supreme Court and sentenced to two

---

1. This petition for habeas corpus has been brought by Gerald L. Shargel as attorney for Vincent Aloi. Hereafter, all use of the term "petitioner" shall refer exclusively to Vincent Aloi.

2. N.Y. Penal Law § 210.15 (McKinney 1971).

3. See note 12 and accompanying text, infra for a full description of the material involved.

and one-third to seven years imprisonment. The Appellate Division affirmed without opinion, *People v. Aloi*, 45 A.D.2d 819, 356 N.Y.S.2d 545 (1st Dept. 1974), and the Court of Appeals denied leave to appeal. Thereafter, Aloi petitioned in federal court for a writ of habeas corpus claiming both self incrimination and due process grounds. Judge Weinfeld found, *United States ex rel. Aloi v. Arnold*, 413 F.Supp. 1384 (S.D.N.Y. 1976), that the due process ground had not been raised on appeal in state court and thus that there had been no exhaustion of state remedies with regard to that claim. Since he found that the due process claim was sufficiently related to the self incrimination claim so as to preclude review of either until the due process claim had been properly presented to the state court, he denied the petition without prejudice.

Petitioner returned to the state courts to move under New York's post-conviction statute[4] to vacate the judgment on both self incrimination and due process grounds. He failed, however, to offer any explanation why the due process claim had not been raised on direct appeal, a failure which precluded the state Supreme Court from reviewing the claim on the merits.[5] The motion was denied, as was leave to appeal to the Appellate Division. Petitioner thereupon brought his second federal habeas corpus petition on the same two grounds. Judge Stewart, in *Shargel ex rel. Aloi v. Arnold*, No. 77 Civ. 316 (S.D.N.Y. May 27, 1977) (unreported opinion), once again found that there had been no exhaustion of state remedies because the state court had not had the

opportunity to determine whether petitioner's failure to raise the due process claim on direct appeal was "justifiable," (and thus whether the motion could have been heard on the merits), and denied the petition. Whereupon petitioner once again went back to state court to file a second post-conviction motion to vacate, this time accompanied by an affidavit explaining his earlier actions.[6] This motion was denied, as was leave to appeal to the Appellate Division.

■ Petitioner has now filed his third federal habeas corpus petition alleging the same two claims. No motion has been made by the respondents to dismiss for failure to exhaust state remedies. We agree that petitioner has finally exhausted his state remedies, and met the requirement set out in *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) to present "the state courts with the same claim he urges upon the federal courts." *See United States ex rel. Gibbs v. Zelker*, 496 F.2d 991, 994 (2d Cir. 1974); *United States ex rel. Nelson v. Zelker*, 465 F.2d 1121, 1124 (2d Cir.), *cert. denied*, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). Thus, this Court may now, on petitioner's third try, reach the merits of the petition.[7]

### The Self Incrimination Claim

■ An important function of the Fifth Amendment is to guarantee an individual's right against self incrimination by protecting him from being compelled to be "a witness against himself" in a criminal case.[8] The function of the grand jury is to investigate fully all potential criminal

---

4. N.Y.Crim.Proc.Law § 440.10 (McKinney 1971).

5. N.Y.Crim.Proc.Law § 440.10(2)(c). Under the terms of this provision, a petitioner must demonstrate that his failure to raise an issue on direct appeal was "justifiable" in order to permit the Court to make a post-conviction determination on the merits.

6. Petitioner's explanation consisted of an affidavit submitted by the attorney who had represented him on his direct appeal. In that affidavit the attorney stated that he believed that he had raised the due process issue on appeal but had inartfully failed to make specific reference to the appropriate constitutional provisions.

7. At the present time the petitioner is in federal custody serving a nine-year term on an unrelated federal conviction. Respondents, however, in light of *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), do not contest petitioner's right to challenge his future state incarceration.

8. The Fifth Amendment's guarantee against self incrimination protects an individual from state as well as federal encroachment. The Supreme Court held in *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964): "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to

charges to insure that, "serious criminal accusations will be brought only upon the considered judgment of a representative body of citizens acting under oath and under judicial instruction and guidance." *United States v. Mandujano,* 425 U.S. 564, 571, 96 S.Ct. 1768, 1774, 48 L.Ed.2d 212, 219 (1976) (plurality opinion of Burger, C. J.). On occasion, the need of a grand jury to know comes into conflict with a witness' right against self incrimination. In such a situation, as was noted by the Second Circuit in *United States v. Tramunti,* 500 F.2d 1334, 1342 (2d Cir.), *cert. denied,* 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974), "[t]he accommodation between the right of the government to compel testimony, on the one hand, and the constitutional privilege to remain silent, on the other, is the immunity statute."

■■ In order for a grand jury to compel testimony over a claim of privilege, it is necessary that the immunity afforded be at least as insulating as the protection afforded under the Constitution. In *Kastigar v. United States,* 406 U.S. 441, 453, 92 S.Ct. 1653, 1661, 32 L.Ed.2d 212, 222 (1971), the Supreme Court held that the federal immunity statute, 18 U.S.C. §§ 6002–3, which provides for use and derivative use immunity, is, "coextensive with the scope of the privilege itself against self incrimination." *See Glickstein v. United States,* 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128 (1911). New York's immunity statute, which provides for transactional immunity as well as that for use and derivative use,[9] is even more

protective. As immunity is treated as having "substituted for the privilege," *United States v. Mandujano,* 425 U.S. at 576, 96 S.Ct. at 1776, 48 L.Ed.2d at 222, a "witness can be compelled to answer, on pain of contempt, even though the testimony would implicate the witness in criminal activity." *Id.* at 575, 96 S.Ct. at 1776, 48 L.Ed.2d at 221.

■■ Since the transactional immunity afforded a grand jury witness under New York law provides greater protection than does the Fifth Amendment itself, it is clear that the compelled testimony of such an immunized witness cannot be used by, "prosecutorial authorities . . . in any respect . . . [and] cannot lead to the infliction of criminal penalties on the witness." *Kastigar v. United States,* 406 U.S. at 453, 92 S.Ct. at 1661, 32 L.Ed.2d at 222.[10] The only exception to this rule occurs when the witness perjures himself. As noted recently by the Third Circuit in *United States v. Apfelbaum,* 584 F.2d 1264 at 1269 (3d Cir. 1978): "Perjury however is a violation of an independent criminal statute, and as a practical matter, if immunity constituted a license to lie, the purpose of immunity would be defeated." Thus a witness, despite the grant of immunity, and without coming into conflict with the constitutional prohibition against compulsory self incrimination, *United States v. Mandujano,* 425 U.S. at 576–577, 96 S.Ct. at 1776–1777, 48 L.Ed.2d at 222,[11] can be prosecuted for his perjurious statements before the grand jury.[12]

remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty, as held in *Twinings* [*Twinings v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97] for such silence."

9. The immunity afforded a witness in a grand jury proceeding under N.Y.Crim.Proc.Law § 190.40 is defined in § 50.10(1) (McKinney 1971) which states, in pertinent part that: "A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses 'immunity' from any such conviction, penalty or forfeiture."

10. *Kastigar* dealt with the less inclusive federal immunity statute. Whatever protections are afforded by that statute are encompassed in New York's transactional immunity law.

11. The Supreme Court has held that prosecution for false statements or perjury can be had even in cases where the government exceeded their authority in making the inquiry. *See, e. g., United States v. Wong,* 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977); *United States v. Knox,* 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969). *Bryson v. United States,* 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969).

12. N.Y.Crim.Proc.Law § 50.10(1) (McKinney 1971) provides, in pertinent part: "A person

To prove perjury against a defendant the prosecution can introduce into evidence such part of the defendant's immunized testimony as is necessary to establish the *corpus delicti* of the offense. *United States v. Apfelbaum*, 584 F.2d 1264 at 1270; *United States v. Hockenberry*, 474 F.2d 247, 249 (3d Cir. 1973). Use in this manner of such limited portion of the immunized testimony is the extent to which the prosecution can go without violating the Fifth Amendment. In defining *corpus delicti* the court in *Apfelbaum* stated, *supra*, at 1270 n. 9: "[W]e define *corpus delicti* to mean only the statement or statements of the defendant which the grand jury has charged to be perjurious, together with no more than that minimal testimony *essential* to place the charged falsehood into its proper context." *See United States v. Berardelli*, 565 F.2d 24 (2d Cir. 1977); *United States v. Housand*, 550 F.2d 818 (2d Cir.), *cert. denied*, 431 U.S. 970, 97 S.Ct. 2931, 53 L.Ed.2d 1066 (1977); *United States v. Tramunti*, 500 F.2d 1334.[13] Beyond this minimal use, as noted in *Housand, supra* at 822, truthful grand jury testimony is "[not] admissible to prove perjury, for its use . . . [is] prescribed by the immunity granted."

The respondent asserts that petitioner's grand jury testimony is admissible for any "legitimate purpose" to show that petitioner perjured himself before the grand jury. We cannot accept such a broad formulation. The court in *Hockenberry*, 474 F.2d at 250, stated that, "if immunity that deprived him [the defendant] of that privilege [against self incrimination] is to be, as constitutionally it must, coextensive with the privilege itself, his compelled admission of wrongdoing cannot later be used to discredit his effort to defend himself against a charge of some other wrongdoing." The extent to which immunized testimony can be introduced by the prosecution in a later proceeding is thus severely circumscribed. *United States v. Apfelbaum*, 584 F.2d 1264 at 1270. In *Apfelbaum*, the Court held that only that part of the immunized testimony which was "incorporated in *haec verba* in the perjury indictment" could be considered part of the *corpus delicti, id.* at 1270, n. 9, and therefore admissible. In this case, however, we see no need to limit the *corpus delicti* to the same extent. We define *corpus delicti* as being the perjurious statements alleged in the indictment plus the *minimal relevant* and *essential* other testimony necessary to be able to place the alleged perjury in its proper context. Material beyond this may not be introduced at trial, nor may it be contained in the indictment.

In the state's prosecution against Aloi virtually the entire minutes of his immunized grand jury testimony was introduced into evidence. This material went far beyond that minimal amount of other testimony which was needed to place the alleged perjury in its proper context, and thus was not within the *corpus delicti*.[14] It

---

who possesses such immunity [transactional] may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceedings."

**13.** The Second Circuit in *Tramunti* cited and endorsed the Third Circuit's decision in *Hockenberry*, reading that case as standing for the proposition that you cannot use truthful immunized grand jury testimony in a later prosecution. *Tramunti* held, however, that the immunity statute did not prevent the use of *false* grand jury testimony for impeachment purposes at a criminal trial. The Third Circuit has subsequently seen *Tramunti* as "embracing the principle that while truthful testimony can have no subsequent use under a grant of immunity, *untruthful* testimony is unprotected. That

same principle was announced in *Hockenberry*, and is endorsed here." *United States v. Frumento*, 552 F.2d 534, 543 n. 16 (3d Cir. 1977).

**14.** The minutes of petitioner's testimony before the grand jury constitute 90 pages of the trial record. Of that material, 59 pages, or nearly two-thirds of the minutes, relate to matters which appear altogether immaterial both to the alleged perjurious statement and to developing the context in which the perjured testimony was given. Questions and answers concerning the nature of Aloi's business, how the business was run, where it was located, the dates during which Aloi worked, and the extent of income derived from it, formed the substance of this material. (Trial Transcript pages 378–437.)

has been held that that part of the immunized testimony which is not within the *corpus delicti* of the perjury cannot be used by the prosecution as substantive evidence in proving its case in chief. *United States v. Apfelbaum*, 584 F.2d 1264 at 1270. Nor can such testimony be used for the purpose of impeachment if the grand jury witness is later called to testify at trial. *United States v. Frumento*, 552 F.2d 534, at 542–543, (3d Cir. 1977); *United States v. Tramunti*, 500 F.2d at 1344; *United States v. Hockenberry*, 474 F.2d at 250. As was stated in *Frumento, supra*, at 543, and quoted with approval in *Apfelbaum, supra*, at 1270:

"Clearly, if a witness had invoked his Fifth Amendment privilege, the government could have no testimony available with which it might impeach his subsequent sworn statements. Were we to permit impeachment with immunized testimony we would then be affording the immunized witness something less than his full Fifth Amendment protection."

■ We now hold that that part of Aloi's immunized testimony not within the *corpus delicti*, material which in fact goes very far beyond that which is necessary, or even relevant, to placing the alleged perjury in its proper context, cannot be allowed into evidence against the petitioner either for the prosecution's stated purpose of determining the materiality of the alleged perjury (which could have been determined by using testimony within the *corpus delicti* and by other evidence) or for the purpose of showing that he committed perjury while testifying. Use in such a manner constitutes an impermissible infringement upon his privilege against self incrimination: "Nor may such use be harmonized with the scope of immunity afforded . . . [the defendant] by statute, because as the Supreme Court has declared, use and fruits immunity is, and must necessarily be, co-extensive with the privilege." *United States v. Apfelbaum*, 584 F.2d at 1271. Since such material was introduced against the petitioner, we find that his conviction in state court was obtained in derogation of his Fifth Amendment rights. In such situations federal habeas corpus relief is appropriate.

■ The respondent contends, nevertheless, that the grand jury testimony is admissible because it was false and evasive and thus not within the protection of the Fifth Amendment. That such false testimony is not protected is clear: "If he gives false testimony, it is not compelled at all. In that case, the testimony given not only violates his oath, but is not the incriminatory truth the Constitution was intended to protect." *United States v. Tramunti*, 500 F.2d at 1342. *Accord, United States v. Moss*, 562 F.2d 155 (2d Cir.), *cert. denied*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (U.S. 1978); *United States v. Housand*, 550 F.2d 818. But before this rule can come into effect, there must be more than just a mere allegation that such testimony is false. In deciding this same question the Third Circuit in *Apfelbaum*, 584 F.2d 1264 at 1271, stated: "Permitting the government unrestricted use of any immunized statements whenever it supposes them to be false would necessarily vitiate the protection afforded by a grant of immunity and would effectively abrogate the immunity agreement." The Court there held that such immunized statements could not be used until they were incorporated "into a false swearing indictment as the *corpus delicti* of the indictment." The Second Circuit has not gone this far and does not require that the false testimony be part of the *corpus delicti* of an indictment to be usable. However, there must be some independent proof of the falsity before the testimony is admissible. *See, e. g., United States v. Moss*, 562 F.2d at

An additional 18 pages of testimony concern matters only somewhat relevant to developing the context of the perjury, which at the same time are, however, quite incriminating in regards to petitioner's organized crime connections. Questions and answers here concerned the nature of petitioner's relationship with such individuals as Messrs. DiBiasi, Lupurelli and Yacavelli, and included such questions as (Transcript at 447), "Do you know his nickname?" (Transcript at 437–455). Only 9 pages of the minutes contain questioning which is directly relevant to the issue of petitioner's presence in the Nyack apartment (Transcript at 456–464).

165. ("[T]he acknowledgment by the defendant that it was perjurious rendered it usable."); *United States v. Berardelli*, 565 F.2d at 29 ("Nothing in the *Tramunti* decision suggests that the result in that case would be the same if it could not have been independently determined that the immunized testimony is false."); *United States v. Housand*, 550 F.2d at 823 n. 8. Respondent's bare allegation of falsity is insufficient to remove petitioner's grand jury testimony from the ambit of Fifth Amendment protection.

■ Similarly, we cannot accept the respondent's contention that even if the admission of the testimony was error, it was harmless error since there was overwhelming other evidence to convict him with. The jury in the petitioner's trial, which after five hours of deliberation reported a deadlock, reached a verdict only after additional instruction was given and testimony re-read. The difficulty of the jury in reaching a verdict seems to refute the respondent's claim that the evidence was "overwhelming." In addition, even if it appears to us that sufficient other evidence existed for the jury to convict the petitioner, this does not mean that the error was harmless. The Supreme Court in *Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557, 1566 (1946) held: "[T]he question is, not were they right in their judgment, *regardless of the error or its effect upon the verdict.* It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision." The Court concluded that only if it is sure "that the error did not influence the jury, or had but a very slight effect," *id.,* may the verdict stand. *See United States v. Check*, 582 F.2d 668 at 684 (2d Cir. 1978). Given the difficulty of the jury in reaching a verdict, and the damaging nature of the grand jury testimony (with its allegations of organized crime connections) it seems unlikely that the jury was not influenced, or only slightly influenced, by the testimony. We find that the error in admitting Aloi's grand jury testimony was far from harmless.

We hold that the introduction into evidence, even for a restricted purpose, of substantially all of the petitioner's immunized grand jury testimony violated the petitioner's Fifth Amendment rights.

*The Due Process Claim*

Petitioner presents a second ground upon which to attack his state conviction, contending that he was deprived his right to due process of law guaranteed under the Fourteenth Amendment by the prosecution's "egregious misconduct" at his trial. These allegations raise serious constitutional questions about the fairness of the trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1973). A serious question is also raised as to whether, in light of the Supreme Court's recent decision in *Wainright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), this Court has jurisdiction to reach the merits of this claim, or whether we must find that under state law petitioner has waived his right to raise the due process issue. In view of this Court's disposition of petitioner's self incrimination claim, however, there is no need to reach these issues.

The writ of habeas corpus is granted and the detainer against petitioner is hereby vacated, unless the state commences a new trial of petitioner within 90 days.

SO ORDERED.