OPINION OF THE COURT
William W. Serra, J.
This is a motion to dismiss an indictment on the grounds that in sentencing the defendant and thereby reducing his conviction for arson in the third degree upon a plea of guilty to judgment (as those terms are defined in CPL 1.20 (subds 13, 14, 15), the defendant would be deprived of his rights against self incrimination under the Fifth Amendment of the United States Constitution and to due process under the Fourteenth Amendment of the Constitution as well as his rights against self incrimination and to due process under section 6 of article I of the New York State Constitution and under the Criminal Procedure Law.
Prior to the plea of guilty in a pretrial conference, certain commitments were made which in substance were that the defendant, who set fire to a house or cottage which was destroyed by fire, and his attorney would voluntarily co-operate with the District Attorney in every way they reasonably could to the best and fullest of their abilities in leading to the arrest and conviction of another person *418 believed by the District Attorney to have been the prime mover in the crime. In return, the District Attorney would have no sentencing recommendations.
The court assented that it would, under such circumstances, give due consideration to such conduct and that it would be possible, based upon such conduct and all other materials which may have been developed in the presentence investigation, to consider nonincarceration and relief from liquor license disabilities. No further commitment was made by the court.
The attorneys, out of the presence of the court agreed that “co-operation” was to include a written statement, submission to stress evaluation test, testimony before the Grand Jury and the urging of another witness to cooperate. After a plea of guilty, the defendant submitted to questioning by the District Attorney, gave a statement, and submitted to a four-hour stress test. The District Attorney was not satisfied with the stress test results and indicated to defense counsel he intended to instruct the Grand Jury on criminal contempt in the first degree and peijury in the first degree in relation to the defendant’s proposed testimony before the Grand Jury. Defense counsel advised the District Attorney by letter that he would not permit the defendant to testify before the Grand Jury under those circumstances. The District Attorney subpoenaed the defendant. The defendant moved to quash the subpoena on the grounds that the defendant was being asked to testify against himself and to incriminate himself in violation of his Fifth Amendment rights.
On consideration of the motion by the court, the District Attorney advised the Judge in charge of the Grand Jury that he would move for contempt if the defendant did not testify pursuant to the subpoena. The Judge hearing the application denied the motion to quash. The defense counsel advised that the defendant would refuse to testify on the grounds that any testimony which the defendant might give might incriminate him. The following remarks were then made before the court:
*419 “mr. francis: Well, he’s going to get immunity as all witnesses who testify before the grand jury do. Now, where does that put us just so we can save time?
“mr. Andrews: Someone has to sign a waiver of immunity.
“mr. francis: I’m not asking to sign a waiver of immunity. I’m going to grant him immunity. He gets immunity.
“mr. Andrews: He and I will have to discuss that aspect, but not all witnesses before a grand jury are given immunity. Some are asked to sign a waiver of immunity.
“mr. francis: He’s not being asked to sign. Now what?
“mr. Andrews: I’m going to advise Mr. Wilson that he is granted immunity and not asked to sign a waiver of immunity, he has to recognize that in that posture, he must give testimony or be held in contempt of court.
“mr. francis: Okay, you advise him of that, and we’ll get started right away.”
The defendant testified at length. The Grand Jury was not instructed on contempt or perjury by the District Attorney.
The legal question now before the court is what is the extent of the immunity granted. CPL 190.40 provides insofar as applicable in part as follows: “Grand jury; witnesses, compulsion of evidence and immunity. 1. Every witness in a grand jury proceeding must give any evidence legally requested of him regardless of any protest or belief on his part that it may tend to incriminate him. 2. A witness who gives evidence in a grand jury proceeding receives immunity unless: (a) He has effectively waived such immunity pursuant to section 190.45; or (b) Such evidence is not responsive to any inquiry and is gratuitously given or volunteered by the witness with knowledge that it is not responsive, (c) *** Any further evidence given by the witness entitles the witness to immunity except as provided in subdivisions (a) and (b) of this section.”
CPL 50.10 defines such immunity as follows: “ ‘Immunity.’ A person who has been a witness in a legal proceeding, and who cannot, except as otherwise provided in this *420 subdivision, be convicted of any offense or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence therein, possesses ‘immunity’ from any such conviction, penalty or forfeiture. A person who possesses such immunity may nevertheless be convicted of perjury as a result of having given false testimony in such legal proceeding, and may be convicted of or adjudged in contempt as a result of having contumaciously refused to give evidence therein.”
This is an unsettled area of law with two conflicting cases found in New York State, both in nisi prius courts.
In 1940, in People v Fine (173 Misc 1010), it was held in Orange County Supreme Court under section 996 of the Penal Law, then in effect, and section 6 of article I of the New York State Constitution that testimony before the Grand Jury against another defendant concerning the facts of the crime which he had been convicted of after trial but as to which he had not yet been sentenced did not prevent his subsequent sentence for the crime of which he had been convicted. It is noticed that while the section is similar to the CPL, there is no finding of prejudice to sentencing, and a full trial had been had of the issues of the case.
In 1978, Matter of Jaime T. (96 Misc 2d 173), a contrary opinion was rendered. This case involved a juvenile offender charged with burglary in the second degree (Penal Law, §§ 140.25, 10.00, subd 18), to which the respondent had entered a plea of guilty. The Law Guardian moved for a dismissal upon substantially the same grounds as in this case. For reasons not stated, the District Attorney did not oppose the motion to dismiss in Matter of Jaime T., appearing to concur in the immunization theory of the court. The court, interpreting the language of CPL 50.10 as to “penalty or forfeiture” held that after testifying before the Grand Jury, the juvenile respondent could no longer be subjected to Family Court dispositional procedures, such procedures being analogous to criminal sentencing involving penalty or forfeiture, citing Matter of Gault (387 US 1) and Matter of De Gaglia (54 Misc 2d 423).
*421 Once a defendant has been convicted, sentenced and his rights of appeal have expired, there is no question but that he can be compelled to testify as to the crime of which he has been convicted (Reina v United States, 364 US 507; People ex rel. Hunt v Lane, 132 App Div 406, affd 196 NY 520; United States v Gernie, 252 F2d 664, cert den 356 US 968, reh den 357 US 944).
More recent interpretations of the Fifth Amendment of the United States Constitution in relation to self incrimination and immunity have tended to broaden rather than curtail its implications.
In Murphy v Waterfront Comm. (378 US 52), it was decided by the United States Supreme Court that the intrajurisdictional holdings of the effect of immunity formerly held to be the law were ended and immunity under the constitutional protection was extended to a State witness against incrimination under Federal as well as State law and to a Federal witness under State as well as Federal law.
The immunity granted is coextensive with the scope of the constitutional privilege against self incrimination, and this is so regardless of the adequacy of the immunity statute (Kastigar v United States, 406 US 441; see, also, United States v Domenech, 476 F2d 1229).
The New York immunity statutes, however, have long been held to go beyond the constitutional mandates (Matter of Doyle, 257 NY 244; see, also, Shargel v Fenton, 459 F Supp 700, involving abuse of immunity rights of a defendant in a prosecution for perjury in the first degree to the same effect).
In State v Tyson (43 NJ 411) it was held that a defendant who had pleaded guilty to a criminal charge but was not yet sentenced retained his constitutional right to refuse to testify on the ground that his answers could incriminate him. In Frank v United States (347 F2d 486) it was held his privilege against self incrimination continued during his appeal after conviction and sentence and that a Federal immunity statute similar to CPL 50.10 required dismissal of his indictment following testimonial compulsion.
*422 In Steinberger v District Ct. In & For Tenth Judicial Dist. (198 Col 59) after petitioner was tried and convicted, but before she was sentenced, she was compelled under a grant of immunity, after she had first asserted her privilege against self incrimination, to testify at the trial of her codefendant. She then moved the respondent court to vacate her guilty verdict and dismiss the charges against her. The respondent court denied the motion, contending that its order granting statutory immunity was unnecessary to compel petitioner’s testimony about the crime for which she had previously been convicted since her privilege ended with the guilty verdict. The Supreme Court of Colorado did not agree, saying that the protections afforded by the Fifth Amendment, and by the Colorado Constitution, do not terminate upon a finding of guilt and before sentence is imposed, because of the possibility that a witness defendant’s forced incriminating statements could influence the court to impose a harsher sentence than it might have absent the involuntary testimony.
The court concluded that imposition of a sentence for the crime described in the compelled testimony was clearly barred by the plain words of the Colorado immunity statute (Col Rev Stats, § 13-90-118), “no such witness may be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after'having claimed his privilege against self-incrimination, to testify or produce evidence”, and that, since a recital of the sentence is an essential part of a judgment of conviction, dismissal of the charges against petitioner was required.
Coming back to the facts of the case in hand, the court finds that the defendant has suffered such coercion and infringement on his rights against self incrimination that he must be deemed immune from further prosecution in this case, under New York’s immunity statutes, CPL 190.40 and 50.10. This defendant, with a long history of minor offenses, except for the preplea understandings, which were based in part upon certain trial difficulties and weaknesses of the prosecution’s case, would normally be entitled to little or no consideration of any clemency whatsoever. The District Attorney, by his actions, has destroyed *423 this thin shell of possible favorable consideration by shattering any possibility of voluntary co-operation. Based upon his reaction to an interpretation of the results of an investigatory tool deemed not reliable for evidentiary purposes by the New York State Court of Appeals (People v Tarsia, 50 NY2d 1, 7), the District Attorney threatened the defendant with further and additional felonious prosecution and then, by compulsion of testimony before the Grand Jury, overtly conferred testimonial immunity. The defendant, having, on the agreement of both prosecuting and defense counsel, been induced to fully disclose his entire involvement to a total destruction of his remaining Fifth Amendment rights, was at that point effectively deprived of any potential right of appeal which may have arisen from pretrial motions and which could, if allowed, have resulted in a de novo trial. His right to withdraw his plea before sentence has been similarly diminished, and his efforts, to the extent they may have existed, to prove total co-operation in securing the conviction of another allegedly more culpable individual, have been taken away. He has clearly been granted immunity from being subjected to “any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he gave evidence” by the action of the District Attorney (CPL 50.10).
The Supreme Court of the United States expounded the rule: “Transactional immunity, which accords full immunity from prosecution for the offense to which the compelled testimony relates, affords the witness considerably broader protection than does the Fifth Amendment privilege. The privilege has never been construed to mean that one who invokes it cannot subsequently be prosecuted. Its sole concern is to afford protection against being ‘forced to give testimony leading to the infliction of “penalties affixed to *** criminal acts.” ’ Immunity from the use of compelled testimony, as well as evidence derived directly and indirectly therefrom, affords this protection. It prohibits the prosecutorial authorities from using the compelled testimony in any respect, and it therefore insures that the testimony cannot lead to the infliction of criminal penalties on the witness” (Kastigar v United States, 406 US 441, 453, supra).
*424 The District Attorney, having opted to grant transactional immunity by compulsion of testimony in this manner, in order to secure another prosecution he deemed more important, cannot now complain of the results. The effect of the invasion of self incrimination rights invoking statutory immunity is termination of prosecution altogether (Matter of Doyle, 257 NY 244, supra; People v Breslin, 306 NY 294).
The motion for dismissal of the indictment is granted.